THE CAMDEN AND ATLANTIC RAILROAD COMPANY, PLAINTIFF IN ERROR, v. MARGARET WILLIAMS, ADMINISTRATRIX, &c., OF JOHN WILLIAMS, DECEASED, DEFENDANT IN ERROR.

1. Standard mortuary tables may be used, in a judicial proceeding, to aid in determining the probable duration of human life. They do not furnish an absolute rule of computation. Each case must stand by itself, on its own conditions.

2. In a jury trial where probable duration of human life is a subject of inquiry, a standard mortuary table may be received in evidence. It must be proved to be authentic and its character and office should be explained.

3. The "Carlisle Table of Mortality" may be assumed to be a standard table, and is evidential, irrespective of the condition of health of the person whose expectancy of life is the subject of inquiry; but that condition must be taken into account in determining the probable duration of such person's life.

4. Failure to properly supplement legal evidence does not render it illegal. It will stand unless motion be made to suppress it.

5. A self-disserving declaration of a decedent, if admissible in evidence, in an action to recover damages for injury alleged to have caused his death, is not conclusive against the plaintiff.

6. Omission of a trial judge to instruct a jury on a particular point is not assignable as error unless such instruction be specially requested.

7. Comments on evidence in a charge to a jury are not assignable as error if the facts are left to the jury. It is only where a material fact is stated as in proof, when there is no evidence at all to support the statement, that there is legal ground of complaint in this regard.

[*Argued March 9th*, 1898 ; *decided June 20th*, 1898.]

On error to the Supreme Court.

The administratrix of John Williams, deceased, recovered judgment, on verdict, against the Camden and Atlantic Railroad Company for damages sustained by the widow and next of kin of the decedent, by reason of his death alleged to have been caused by negligence in the operation of the defendant's street railway in Atlantic City. The deceased and his young son were passengers upon an open car drawn by a trolley car

that was propelled by electricity. The negligence charged was the sudden starting of the cars while the deceased was alighting at a crossing where a stop had been made at his signal. The defence was that the cars had not stopped when the deceased started to alight, and that in any case there was negligence in the manner of his alighting that contributed to the injury.

A rule to show cause why a new trial should not be granted was discharged after argument (37 *Atl. Rep.* 1107), but the exceptions sealed at the trial were reserved and are now before this court on writ of error.

For the plaintiff in error, *Joseph H. Gaskill.*

For the defendant in error, *Clarence L. Cole.*

The opinion of the court was delivered by

COLLINS, J.   The second, sixth and tenth assignments of error were waived.   I will discuss the others in their order. The first is that the " Carlisle Table of Mortality " was admitted in evidence.   It is common knowledge that approved mortuary tables are in constant use to aid in determining the probable expectancy of human life.   They are derived from statistics preserved through a course of years, and have become standard by the test of subsequent experience.   The courts have almost universally availed themselves of help from these sources when expectancy of life became involved in a judicial proceeding.   15 *Am. & Eng. Encycl. L.* 881 *and notes; Abb. Tr. Ev.* 724; *Gill. Ind. & Coll. Ev.*, § 85.   An exhaustive history of the subject is embodied in *Williams'* *Case,* 3 *Bland* 186, where Chancellor Bland seems to take judicial notice of the various tables and makes use of them as aids in fixing the value of a life estate in lands.

The right to use such standard tables in evidence has never been expressly declared in this court, but the common practice to so use them is recognized in the case of *New Jersey Zinc Co.* v. *Lehigh Zinc Co.*, 30 *Vroom* 189, where such

use is stated as a proper exception to the general rule excluding books of inductive science as evidence. It is an exception resting really in necessity. A very satisfactory exposition of the legitimate use of such tables, as applied to actions for damages for injury resulting in death, will be found in the case of *Steinbrunner* v. *Pittsburg, &c., Railway Co.,* 146 *Pa. St.* 504. They do not afford absolute rules for computation, but they may help to form the judgment. Each case stands by itself and has its own conditions, and the tables must be intelligently applied to that case.

Among mortuary tables that known as the "Carlisle Table of Mortality" stands pre-eminent. It was elaborately compiled in the latter part of the last century from the statistics of certain parishes in the city of Carlisle, in England, extending over a series of years. It was received with a high degree of favor among insurers and others concerned with forecasting the probable duration of life. It almost entirely superseded the Northampton table and others still earlier, now altogether obsolete. It is said of this Carlisle table in 13 *Encycl. Brit.* (*9th ed.*) 169, that "no other mortality table has been so extensively employed in the construction of auxiliary tables of all kinds for computing the values of benefits depending upon human lives." Insurers now resort to their own experience tables, compiled from their statistics of selected lives, but there seems to be no successor to this general table of mortality. Every lawyer knows that it forms the basis of the table adopted by our own Court of Chancery as a guide for calculating the value of a life estate (Chancery Rule 184), and it everywhere has gained judicial recognition, as will appear upon consulting the decisions noted in the works above cited on the general subject. It is proper, therefore, to admit this standard table in evidence without proof of its repute; that may be assumed. Of course the authenticity of the paper produced as the table should be established by proof satisfactory to the court, as by the testimony of a witness familiar with it and with its use. There was no such proof in the case in hand, but both the exception and

the assignment of error admit authenticity, and there is no complaint now on that score. The complaint is that the judge did not explain and limit the evidential force of the table and particularly caution the jury that it could not be considered at all unless the deceased was proved to have been in good health at the time of the injury. This complaint does not support the exception. That was directed against the mere admission of the table in evidence. It was legal evidence irrespective of the condition of health of the deceased, for it is not a table compiled from statistics of selected lives only, but of course such condition had to be taken into account, and testimony on that subject was in fact taken by both parties. The table was not admitted as controlling. The judge said, " we are not bound by it," and in his charge to the jury he very clearly and correctly stated the rules governing the estimate of probable duration of life to be made by a jury in awarding damages in cases of injury resulting in death.

We think that when, in a jury trial, resort is had to a mortuary table, its office and use should be explained by a competent witness, but omission to call such a witness does not make the previous admission of the table legal error. Like any other evidence available only when supplemented, it stands unless motion be made to suppress it. Its effect is another matter. That the judge in his charge failed to refer to and explain the legitimate use of the table affords no ground of complaint in the absence of any request for cautionary instruction and of any exception in that regard. *Mead* v. *State*, 24 *Vroom* 601.

The third assignment complains that the judge struck out legal testimony. He did strike out two questions and answers, because, as he justly said, they were " exceedingly confused." This was not reversible error. The judge did not intend to exclude the testimony sought and could not have been understood as so intending. Counsel was given full liberty to elicit such testimony in a more intelligible form, but evidently thought it not worth while to do so.

The fourth assignment complains that the judge, in his charge, asserted as a fact, instead of as the plaintiff claims, that young Williams was carrying an umbrella and a satchel, with which the defendant claimed the deceased was encumbered when he attempted to alight from the car. This is hypercritical. Later in his charge the judge said that this was a disputed question, and, in response to a request of the defendant's counsel, expressly instructed the jury that if the deceased had the umbrella and satchel in his hand and there existed other conditions stated in the request, he was guilty of contributory negligence and his administratrix could not recover.

The fifth assignment is based on an exception to the judge's remark to the jury that Mr. Williams' fall was a hard one. We do not feel required, on a writ of error, to read and weigh all the testimony in order to determine whether or not this remark was justifiable. The laws of gravitation would seem to warrant the adjective when applied to any fall from the run-board of a car suddenly started, where the subject of the fall strikes the ground upon his back.

The sixth assignment assumes that a remark of the judge that "people are apt to be free and easy about getting on and off a trolley car without stopping" may have injured the defendant. The context shows that the judge meant to disapprove the practice he mentioned, for he adds that "they take the risk." This remark could not have affected the plaintiff's right of recovery, for that was made to depend upon the car having stopped before the deceased stepped from it.

The remaining assignments deal with the effect of the treatment in the charge of an alleged self-disserving declaration of the decedent. It appeared in the case that, directly after the fall, Mr. Williams was carried by the bystanders to a neighboring saloon, where whiskey was given him as a stimulant. A physician was summoned. Young Williams testifies that his father was in a dazed condition, but in about fifteen minutes seemed all right, and the witness went to

notify his mother.   In the meantime, Dr. Ullmer, the physician sent for, had arrived.   He was called as a witness for the defence.   He testified, among other things, to a conversation with Mr. Williams while sitting in the saloon.   His testimony on that subject was as follows: "Naturally, I asked him how it happened, and he told me he was coming up the avenue with his little boy, and he said he wanted to stop at South Carolina avenue for the train, and the car either didn't stop or he didn't get off, and signaled again at North Carolina avenue, and he was afraid they were not going to stop, and he jumped off."

The judge was asked to charge the jury that if they believed the doctor's statement of what the deceased said, there was negligence *per se* and the plaintiff could not recover. He properly declined so to charge.   The question could not be wholly decided upon that statement.   The plaintiff was entitled to a verdict in accordance with the facts and was not estopped by the decedent's declaration.   It has been held in some jurisdictions that such a declaration is not even admissible in evidence in an action to recover damages for injury resulting in the death of the declarant except when a part of the *res gestæ.   Tiff. Death by Wrong. Act or Def.*, § 194.   We need not pass upon this question.   Certainly, the declaration is not conclusive as evidence.   A further complaint is that, in discussing this subject, the judge called attention to the fact that Mr. Williams' account of the affair was given "after the man had been hurled to the ground, picked up and stimulated with whiskey," and told the jury to consider "whether or not, in his condition, coming from an occurrence which was of so serious and sudden a character, under the influence of stimulants and at the same time under the influence of the natural confusion of mind, he could give a perfect and accurate statement of just how the thing happened."   Exception was taken to the language quoted on the ground that "there was no contradiction of the doctor's testimony that at the time the deceased was perfectly conscious, coherent and unconfused."   The doctor gave no such testimony.   He

merely said that he didn't notice that the stimulant had had any effect upon the deceased. I see nothing objectionable in the judge's remark—certainly no reversible error. His use of the word "hurled" was criticised in the argument in this court, but not in the exception presented to the judge. It was a strong word, but, in the connection in which it was used, could have done no harm. It related to the character of the fall, not to its cause.

Exception was also taken to a suggestion of the judge that Mr. Williams may have been mistaken in saying that he "jumped" from the car because he thought it was not going to stop at his signal, as "all the rest of the evidence in the case points to different conditions of things." It is claimed that this was a misrecital of the evidence. The judge was right. No witness said that Mr. Williams jumped from the car. All agreed that the car was moving very slowly between the crossings and stopped within a few feet of the place where Mr. Williams stepped down and within a second or two of his fall. The only dispute was as to whether it had stopped when he stepped down and was started again suddenly before he could find footing, or whether he stepped down while it was yet in motion. The supposed statement of the decedent was in conflict with all the testimony, and the judge's comment was warranted.

I have discussed all the objections of counsel in order to demonstrate that the plaintiff in error has no real grievance, but it should be understood that comments on evidence are not assignable as error. *Donnelly* v. *State*, 2 *Dutcher* 463; *Bruch* v. *Carter*, 3 *Vroom* 554; *Castner* v. *Sliker*, 4 *Id.* 95, 507; *Engle* v. *State*, 21 *Id.* 272. Much latitude is necessary in presenting facts and inferences to a jury, and unless a fact of moment clearly connected with the merits is stated to be in proof when such fact has no testimony whatever to support it, error cannot be assigned. Alleged misconceptions of the judge, as to matters of fact and instructions founded upon such misconceptions, will not suffice. *Smith & Bennett* v. *State*, 12 *Vroom* 370; *State* v. *Raymond*, 24 *Id.* 260.

·The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 13.

*For reversal*—None.