OLIVER DICKERSON, RESPONDENT, v. MUTUAL GROCERY COMPANY, APPELLANT.

Argued March 12, 1924—Decided May 19, 1924.

1. Plaintiff, while pushing his own motor car, which had "gone dead," toward a gasoline station, was run into from behind by defendant's car, and sustained personal injury. *Held*, that under the circumstances indicated by the evidence, the questions of negligence and contributory negligence were for the jury.
2. The evidential character of the "Carlisle table of mortality" and of the Chancery table based thereon, in damage suits at law, is not limited to death cases, but the table may be used, subject to proper cautionary instructions, in cases where the probable duration of life of a living plaintiff is a factor in the appraisal of damages.

---

On appeal from the Supreme Court.

For the appellant, *M. Casewell Heine* (*Palmer Bradner*, on the brief).

For the respondent, *Theodore Rurode*.

The opinion of the court was delivered by

PARKER, J.   Plaintiff, while driving his own automobile, ran out of gasoline, and, having passed a gasoline station, decided to push the car back to it. So he gave the wheel to his wife, got out of the car and began to push it. The car had made the turn to the rear, and plaintiff was slowly pushing it toward the source of supply, when a servant of defendant, driving its car, came up behind, failed to see plaintiff's car until too late to avoid it, made an unsuccessful effort to swerve out to the left, and caught plaintiff between the front of the defendant's car and the left rear mud-guard of plaintiff's car. The suit was for personal injury, as the collision had caused a comminuted fracture of one leg resulting in a shortening of it and other physical injury. Plaintiff had a verdict and judgment for $5,000. It is claimed for appellant that the trial court should have nonsuited or directed a verdict for defendant, and that there was error in admitting the "table of mortality" contained in the rules of the Court of Chancery and in the comment of the court thereon in the charge.

With respect to the denial of a nonsuit and of a direction, the customary grounds are urged, viz., that the evidence fails to point to any negligence on the part of defendant's servant, and, assuming there was such negligence, then that there was contributory negligence of plaintiff. An attempt is made to differentiate this case on the facts from the ordinary run of highway collision cases, in which, as has many times been said, the disposition of these questions of primary and contributory negligence is, as as rule, pre-eminently for the jury. It was a rainy, foggy night; there were, as claimed, shade trees interfering with the illumination by the usual street lights; defendant's driver had raised his windshield to see better; his headlights failed to penetrate the fog, and, according to his story, the first he saw of plaintiff's car was the reflection from the glass of its rear window, at which time it was only seven feet away; that plaintiff was pushing his own car on the left side, and so must have screened the tail light from the observation of defendant's driver, and so

on. But the credibility of all this was for the jury, and there remained for solution the indubitable situation that the plaintiff, on foot, pushing a dead car, had his leg crushed against it by a following car going at a speed as testified of seven miles an hour. The view taken by our courts of this class of cases is well illustrated by three very recent decisions. *Osbun* v. *De Young,* 99 *N. J. L.* 204; *Seibert* v. *Goldslein,* 99 *Id.* 200, and *McCartney* v. *British-American Metals Co.,* 99 *Id.* 375. In each of these cases we held that a jury question was presented. In the first there was a rear-end collision with plaintiff's standing car, which, as claimed, had no tail light. In the second, also, a rear-end collision, the plaintiff, driving the following truck, recovered against the owner of a stalled truck. In the third, defendant was held liable, because the jury evidently found the absence of a tail light on its truck caused a collision between two other cars, one following the truck, the other passing it from the opposite direction. We see nothing in the present case to take it out of the usual rule that the finding of the facts, and of the inference of negligence to be drawn therefrom, is for the jury.

The other point argued is, to a certain extent, novel. The plaintiff testified that he was twenty-four years old; that before the accident he had earned $30 a week. and since that time, on account of his altered physical condition, he could earn only $24 a week. So far, the usual course of proof was followed, and counsel would be expected to argue, and the court to charge, that if this injury were found permanent, the jury could award such sum by way of damages as would fairly compensate plaintiff for this loss of wages, taking into consideration his age, health and other relevant circumstances. But counsel for plaintiff undertook to give the jury something more definite to work on, by proof of figures based on the average expectancy of life of a man of his age, and offered in evidence the annuity table accredited by the rules of the Court of Chancery and printed in those rules and in *Dick. Chan. Prec.* (*2d ed.*) cxii, the argument being that to purchase an annuity of one dollar at age twenty-four

would cost $15.418, and in proportion for $6 per week for fifty-two weeks, or $312 per annum. This table was authenticated by the testimony of defendant's counsel, called to the stand for that purpose, and who testified that it was customarily used in the Court of Chancery, but that he had never seen it used in a court of law.

The table in question is based on the Carlisle table of mortality, which was expressly approved by this court in *Camden and Atlantic Railroad Co.* v. *Williams,* 61 *N. J. L.* 646. In *Notto* v. *Atlantic City Railroad Co.,* 75 *Id.* 826, the objection to the table admitted in that case was that it was not properly authenticated, but the sufficiency of the Carlisle table was not impugned. Both these cases arose out of an injury causing death, and it is argued that the acceptance of the table should not extend to cases where death has not occurred. It does appear that in some jurisdictions they are not accepted in such cases, but we see no logical reason for the distinction. In the first class of cases the question is, how long would deceased have lived in the course of nature, and contributed in a pecuniary way to the beneficiaries entitled under the statute? In the second class the question is, how long would plaintiff have continued to earn more as a well man than as a crippled one? In both classes the extreme limit is the duration of his life, and as to this the average expectancy of human life, or the present value of the alleged loss of income based on that expectancy, is relevant under proper cautionary instructions. They have been so used in Pennsylvania. *Pauza* v. *Lehigh Coal Co.,* 231 *Pa. St.* 577; 80 *Atl. Rep.* 1126; *Campbell* v. *City of York,* 172 *Pa. St.* 205; 33 *Atl. Rep.* 879; *Seifred* v. *Pennsylvania Railroad Co.,* 206 *Pa. St.* 399; 55 *Atl. Rep.* 1066, though apparently disapproved in *Kerrigan* v. *Pennsylvania Railroad Co.,* 194 *Pa. St.* 98; 44 *Atl. Rep.* 1069. They are held admissible by the United States Supreme Court. *Vicksburg and Meridian Railroad Co.* v. *Putnam,* 118 *U. S.* 545. They should be used, if at all, with a great deal of caution; for while, as we said in the Williams case, *ubi supra,* "every lawyer knows that it [the Carlisle table] forms the basis of the

table adopted by our own Court of Chancery as a guide for calculating the value of a life estate, and it everywhere has gained judicial recognition," yet, after all, they are based on the average expectancy of human life under average conditions, and are incapable of application in any strictly mathematical sense.

We consider, however, that the table in question, authenticated as it was in this case, was competent evidence for what, so far as relevant, it was worth.

It is further argued that the court erred in instructing the jury about the table. We doubt if the exception taken at the trial is adequate to support the ground of appeal which quoted part of the instruction. At the end of the charge counsel said: "So far as the court's charge related to the question of the mortality tables, I would like to have an exception to that part of the charge as relating back to the admission of the evidence." This seems to point no further than to the fact that the jury were told they could consider the table as part of the evidence. We have just held that they could. But there was no error in what he actually did say, which is as follows:

"You have heard the testimony as to the value, according to the tables, of one dollar on the probable length of life, but, of course, that table is only a general rule, based upon the average expectation of life, and there are a great many elements which enter into your verdict in that respect, or which should enter into it. Of course, Mr. Dickerson might live longer than the tables provide; on the other hand, he might be killed in an accident to-morrow or next week, or might die of disease at a much shorter period than the average expectation of life. He might suffer some accident whereby his earning capacity would be much further depreciated. He might, of course, earn more, but that is for you to take into consideration. If he earned more than his $30, which he was earning, then you may ask yourselves whether he suffered any loss or not. All those things you must exercise your good judgment in determining. If he was ill, of course, he could not earn money. So you see there is no absolutely

fixed rule, but it is a question and a situation where you must exercise your very good judgment and common sense, and if you render a verdict for the plaintiff, you must render your verdict in one lump sum for all of these elements of damage which I have outlined to you."

This appears to comply fully with the requirement stated in *Camden and Atlantic Railroad Co.* v. *Williams, supra,* that the judge should "explain and limit the evidential force of the table." As defendant made no request for any instruction on the table, it is difficult to see that the court should have said more than what is quoted above on that subject.

We find no error, and the judgment is, accordingly, affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, CLARK, MC-GLENNON, JJ. 13.

*For reversal*—None.