GEORGE NOA AND CARMELA NOA, PLAINTIFFS-APPELLEES, v. RUSSELL LeGORE AND MARY LeGORE, DEFENDANTS-APPELLANTS.

Argued October 20, 1943—Decided February 2, 1944.

For the defendants-appellants. *Leon M. Bardfeld* and *LeRoy W. Loder.*

For the plaintiffs-appellees, *David L. Horuvitz.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment of the Supreme Court entered on the verdict of a jury at the Cumberland Circuit in favor of the plaintiff George Noa for

$7,000 and in favor of the plaintiff Carmela Noa for $500 against both defendants, Russell LeGore and Mary LeGore.

The allegations of the count of the complaint upon which the issue was tried are based on the negligence of the defendants in installing a water pumping system, the storage tank of which exploded injuring both plaintiffs and damaging their property. The complaint alleges that on June 7th, 1941, the plaintiffs entered into a written agreement with the defendants for the purchase of a certain tract of land with the improvements erected thereon located in Landis Township, Cumberland County, New Jersey; that in and by the terms of the agreement the defendants, as a condition of said sale, among other things, covenanted and agreed with the plaintiffs that they would install in the house erected on the premises an electric water pumping system, the same to operate in good working order. The complaint charges that the system was so negligently and carelessly installed that as a result on Wednesday, August 20th, 1941, before the defendants had an opportunity to use the water system, the water tank exploded, the force of which caused the tank to be projected from the cellar where it stood through the floor joists into the kitchen of the house where plaintiffs were then sitting, striking and knocking them down and causing the injuries set forth in the complaint.

There are twenty-two acts of negligence on the part of the defendants alleged in the complaint, which set forth, among other things, defects in the various parts of the apparatus, including a defective electric switch, failing to provide a safety valve and other necessary parts, faulty workmanship and the employment of an incompetent and unlicensed person to install the apparatus.

Defendants argue their appeal under two points. The first point is that it was error on the part of the trial court to refuse to direct a verdict for the defendants on the ground that the plaintiff George Noa was guilty of contributory negligence. The second point has to do with the refusal of the trial court to charge one of defendant's thirteen requests to charge.

Counsel for defendants do not argue on their brief that at

the conclusion of the whole case there was not sufficient evidence of their negligence to justify the trial court in submitting that question to the jury. We shall, therefore, consider that point as abandoned. Defendants, however, strenuously contend that the evidence is conclusive that the proximate cause of the explosion was the negligent act of the plaintiff George Noa in failing to watch the gauge, after turning on the switch, in accordance with instructions given him by Brown, the workman employed by defendants to install the system, and that a verdict, therefore, should have been directed for the defendants, at least as to the plaintiff George Noa.

With this we are not in accord. Inasmuch as contributory negligence is usually a fact question for the jury (*Rizzolo* v. *Public Service Co-ordinated Transport,* 111 *N. J. L.* 107), we deem it advisable to recite some of the pertinent facts brought out by the testimony. Among the appliances used in this water system was an electric water pump having a rated pumping capacity of 250 gallons per hour, which draws water from a driven well to a storage tank with a capacity of 80 gallons. Tanks of this type are tested at the factory at 125 pounds and are made to withstand a pressure of 75 pounds daily. As the water is pumped from the well by the motor into the tank, the air is forced to the top of the tank and thus compressed, forcing the water through the various pipes to the faucets, and other outlets. It is well known, and the experts so testified, that excessive pressure causes a tank to explode. There was no safety valve or automatic pressure switch attached to the system at the time of this explosion. The testimony was that the absence of either made the system a dangerous instrumentality liable to explode.

On August 19th, 1941, defendants, acting by their employee, Brown, began the installation of the pumping system and continued with the work until about 12:30 o'clock the next day. Brown was unable to get the automatic pressure switch (which was admittedly defective) to operate, and for the purpose of testing the pump he connected it with a hand switch and had the pump working at first intermittently for about fifteen minutes and then steadily for about one-half hour.

Defendants rely to so great an extent on the testimony of their witness, Brown, to prove plaintiffs' contributory negligence that we deem it helpful to quote *verbatim* the following excerpt therefrom as to what happened after Brown had tested the pump and found that it worked. Brown said:

"Well, the pump was running for some time, then I stopped it and told Mr. Noa that the job couldn't be completed until the following morning, because that was a half holiday in Vineland, I wouldn't be able to get a new switch or safety valve to finish the job. He said he needed water so I made an arrangement with him if he would watch the pressure gauge when it got up to 30 pounds to shut it off, I would leave it hooked up, if not, I would disconnect it so the pump couldn't be operated until the following morning when I came back. He said he was acquainted with pumps but not that particular pump and was qualified to take care of it. So under those circumstances and his promise to observe the gauge, I left it. I gave Mr. Noa a complete picture of exactly what happened in case he didn't watch that gauge and should the pump go off."

Noa, on the other hand, denies that Brown made any such arrangement with him as to watching the gauge and shutting the pump off at 30 pounds. He said that the incident Brown refers to occurred during the test while the pump was running off and on and that what Brown said to Noa was: "We will have to see that that goes up to thirty. When it comes to thirty, shut it off." Noa said they pumped fully one-half hour longer and that when Brown was about to leave, the gauge was at twenty-three, and Noa said to Brown that he was not going to use any water and he would shut the pump off (which he said he then did, and that Brown saw him do it) and that then Brown instructed Noa "that if he needed water and didn't get any, he could turn on the switch and when he got enough water, shut it off, turn it on and shut it off alone." This is Noa's version of Brown's instructions to him.

Noa denies that he knew or told Brown that he knew anything about pumps generally or that he told Brown he was

qualified to take care of this pump, and denies that Brown warned him as to the consequences of not watching the gauge.

To complete the story to its unhappy ending, Mrs. Noa arrived at the house at about 4:45 P. M. that day. In the interim between Brown's departure and Mrs. Noa's arrival, Noa was in the house all the time and did not turn the switch of the motor on. Two attempts to get water from the faucets were made after Mrs. Noa's arrival, the first resulting in a sputter of rust and puffs of air but "not enough water to do anything with." On the second attempt no water at all came out, whereupon Mr. Noa (about 5:30 P. M.) in accordance with his understanding of Brown's instructions, went down into the cellar and turned on the switch intending to shut it off as soon as he had enough water. The pump started and he immediately went upstairs, and in less than a minute from the time he turned on the motor the tank exploded causing the injuries suffered. The pressure gauge when Noa turned on the motor registered twelve pounds. It was in the testimony that it had taken in the morning thirty to forty-five minutes to get the pressure up from zero to twenty-three pounds.

It is claimed by the defendants that it was negligence in point of law for Noa to turn the motor on and then leave it without standing by to watch the gauge and turn the motor off at thirty, to which the reply is made that there was no evidence that the pressure ever reached thirty pounds; that the operation of the pump earlier in the day gave ground for believing that it would take at least from fifteen to twenty minutes for the pressure to climb from twelve to thirty pounds, and that the almost instantaneous explosion of the tank following the turning on of the motor at twelve pounds may be taken as proof that the pressure never reached thirty and the explosion was due to some defect in the apparatus or improper installation thereof.

As stated before, defendants attribute this accident primarily to the failure of George Noa to obey the instructions given to him by Brown. What those instructions were and whether they were disobeyed by Noa, and if so, whether Noa's

conduct was the cause of the explosion were, to say the least, debatable questions. This court said in *Lipschitz* v. *New York and New Jersey Produce Corporation,* 111 *N. J. L.* 392, that "unless it is established by the evidence beyond 'fair debate that plaintiff was negligent, and that his negligence directly contributed to the injury complained of, a motion to nonsuit or direct a verdict will be denied;" and also that "where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury." This seems to be the situation here and we conclude that there was no error on the part of the trial court in refusing to direct a verdict in favor of the defendants against the plaintiffs on the ground of their contributory negligence.

Defendants' second point for reversal is that it was error to refuse to charge the defendants' request in the following language:

"A verdict for all future losses should be the present value of future losses and not the future value. You should take into consideration the state of health of the plaintiff at the time of the accident, and his age, which, it has been testified, is seventy-one, which may tend to detract from future losses."

The complaint charges that plaintiff George Noa, in addition to the named injuries, suffered from other injuries, which are permanent, the extent of which he has not yet been able to ascertain, that in the future he will be compelled to expend large sums of money in attempting to cure himself and "\* \* \* was compelled to desist from the type of work which he would have ordinarily done and will in the future be unable to perform said work as a result of the injuries sustained by the negligence of said defendants." Testimony was offered by plaintiffs to substantiate this allegation of the complaint. It, therefore, became important for the jury to know the basis upon which future losses should be determined.

Counsel for plaintiffs contend that the court did not err in refusing to charge defendants' request because it was objectionable for two reasons: "(1) the subject-matter was covered in the court's charge; and (2) it contains two dis-

tinct propositions, the first of which is legally unsound and the second of which calls upon the court to give controlling force to two particular circumstances, the age and state of the health of 'the plaintiff' without designating which plaintiff, there being two in the suit, and neglects to consider (a) other material matters proved in the case, and (b) the plaintiff, Carmelo Noa." We find no merit in any of these objections.

On point (1), counsel for plaintiffs cite the following excerpt from the judge's charge as proof that the question of future losses was adequately covered therein: "* * * I think it is obvious to all of us, that a person who is seventy-one years, does not have the expectancy of life that one of twenty-one has. True, he may outlive the man of twenty-one, but the reasonable probabilities are that in the natural course of events, he will not. So you have to consider that element in this case, if you come to the question of damages. * * *"

We do not agree that the subject-matter of the defendants' request was covered in this or any other part of the court's charge. In the first place no mention was made in the court's charge about the state of health of plaintiff, George Noa, which was admittedly poor. Health is an important factor for the jury to consider in estimating damages in a case of this kind, and the jury should have been so informed.

As to plaintiffs' point (2) it suffices to say that the mere reading of the request makes it obvious that the person referred to was a male and that he was seventy-one years of age and that George Noa was the only one of the two plaintiffs who answered that description. Furthermore, the testimony showed that the plaintiff Carmelo Noa was not permanently or seriously injured and she made no claim for damages for future losses. The answer to plaintiffs' point (2a) is that all other material matters were adequately covered in the court's charge, which counsel for defendants had a right to assume the court would do.

Lastly, we find nothing "unsound" in the request as a whole. An award for prospective damages is similar to a payment in advance and in fixing the sum the amount should

be reduced to its present worth. In *Lambert* v. *Trenton and Mercer Traction Corp.,* 103 *N. J. L.* 23, affirmed by a divided court, 104 *Id.* 175, the trial court in its charge failed to charge the law applicable to the situation, and at the completion of the court's charge counsel for the defendant requested the court orally to charge "that for all future losses in any verdicts that are given for the plaintiffs, the verdicts should include the present value of future losses and not the future value." This request is substantially the same as the request in the instant case. The Supreme Court in reversing the judgment because of the refusal of the trial court to charge the request, said: "While this request was more or less legally involved, it, however, comprehended substantially a correct statement of the legal rule applicable to the present value of a verdict for damages accruing *in futuro,* and to which subject in its charge the court had made no reference."

In *Kappel* v. *Public Service Railway Co.,* 105 *N. J. L.* 264, counsel for defendant requested the court to instruct the jury "that in case they should find for the plaintiff they should, in assessing the damages, ascertain the present value of all future losses  *  *  *." The court refused to so charge. Chief Justice Gummere, speaking for the Supreme Court, said: "The meaning of the request, although it may have been couched in more formal language, seems to us perfectly clear; and that is, that the jury should ascertain the present value of losses accruing in the future and return a verdict for that sum, and not for the total amount of such future losses." The Chief Justice citing the Lambert case held that this was a correct statement of the legal rule applicable to the assessment of damages for future losses, and that the refusal to charge the request was harmful error requiring the reversal of the judgment. In the Kappel case, as in the Lambert case, the request was made orally at the conclusion of the court's charge. In the instant case, the request was substantially the same as in the Kappel case but was made in writing before the court charged the jury and was in proper form, sound in principle and we think it should have been charged and that the refusal of the court to charge the request was harmful error.

For the reasons already stated, we are of the opinion that the judgment in favor of the plaintiff George Noa should be reversed and a *venire de novo* ordered; costs to abide the event.

As to the judgment in favor of the plaintiff Carmela Noa it is not contended that she was guilty of contributory negligence; and, it appearing that the defendants' request to charge applied to George Noa and not to Carmela Noa, the judgment in her favor should be affirmed, with costs.

As to respondent George Noa—

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, THOMPSON, DILL, JJ. 14.

As to respondent Carmela Noa—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, THOMPSON, DILL, JJ. 14.

*For reversal*—None.