43 N.J. Super. 528 (1957)
129 A.2d 299
JOHN KAPPOVICH AND MARY KAPPOVICH, PLAINTIFFS-APPELLANTS,
v.
JOSEPH LeWINTER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1957.
Decided February 13, 1957.
*529 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Raymond Chasan argued the cause for appellants (Messrs. DeFazio, Davidson & DeFazio, attorneys).
Mr. Maurice C. Brigadier argued the cause for respondent (Mr. Ezra L. Nolan, attorney).
*530 The opinion of the court was delivered by JAYNE, J.A.D.
Many pages could be needlessly written graphically descriptive of the scene and anecdotic of the circumstances amid which this mishap occurred in consequence of which several alleged causes of action for damages were instituted. The accident was no more unique than the common vehicular collision between two vehicles at a highway or street intersection in which the personal injuries to the several occupants of the cars and property damages were occasioned. This collision occurred at about 10:15 A.M. at the intersection of State Highway Route No. 1 and Baldwin Avenue in the City of Jersey City.
That which now remains of the interfused causes of litigation between the parties originally implicated is brought to us by the present appeal. The owners and drivers respectively of the two vehicles were Samuel Kappovich and Joseph LeWinter. John and Mary Kappovich were passengers in the vehicle operated by their son Samuel. The jury rendered a verdict against Joseph LeWinter in favor of John and Mary Kappovich, awarding John the sum of $1,200 and Mary the sum of $3,500 damages. An application on behalf of the plaintiffs for a new trial confined to a reconsideration of the damages was denied by the trial judge. We are presently concerned only with the appeal of John and Mary Kappovich in which they complain that the awards of damages respectively made to them by the jury were conspicuously inadequate. No other party appeals and a former cross-appeal has been abandoned.
Our review of the transcript of the pertinent evidence persuades us that there was sufficient proof to support the jury's factual finding of the alleged negligence of the defendant LeWinter, perhaps conceived to have been concurrent and cooperative with that of Samuel Kappovich against whom the claims of these plaintiffs had been compromised. We are therefore in accord with the view of the trial judge that in its relation to the issue of the defendant's alleged liability, the verdict of the jury was in that particular unexceptionable.
*531 We proceed to contrast the awards of compensatory damages with the evidence relative to the injuries and losses, present and prospective, suffered respectively by the plaintiffs.
It is evident that Mrs. Kappovich received serious bodily injury in the mishap. In addition to a concussion of the brain, fractures of the third and fourth metacarpal bones of the left hand, and a laceration above her eye, she sustained a fracture of the acetabulum of such severity that the ball at the head of the femur protruded through the shattered socket into the pelvis. This displacement continues and is said to be beyond surgical adjustment. The sequela is a one-inch shortening of the left limb, a limitation of its use, a lameness requiring the use of crutches or cane, consequent tilting of posture and the development of a painful traumatic arthritic degeneration, all of which incapacitating characteristics of the pelvic injury have and will permanently disable her.
The plaintiff John Kappovich suffered injury to the tendon sheaths of the second and third fingers of his right hand and contusions and abrasions of his right leg. It was claimed that the injury to the hand continues to cause him pain in the distal interphalangeal joints of the fingers in the pursuit of manual work.
However, we notice that his expenditures for the medical treatment of himself, his loss of wages, plus the costs of the treatment and hospitalization of his wife, for which he sued, concededly amounted in the aggregate to $1,598.69. What happened to his claim for the past and future loss of services of his incapacitated housewife? Obviously his per quod recovery is related in some appropriate measure to the nature and extent of his wife's injuries.
While we perceive that the jurors intelligently comprehended at the trial the variety of issues of alleged liability between the implicated parties, their consideration of the elements of compensatory damages was nevertheless manifestly fallacious.
Moreover, there is another feature of the trial of relevancy to the plaintiffs' tendered proof of damages to *532 which our attention has been attracted. Having introduced competent evidence of the permanency of the injury sustained by Mrs. Kappovich and of its painful and crippling effects, counsel for the plaintiffs endeavored to introduce into evidence pursuant to R.R. 4:45A that portion of the tables of mortality and life expectancy printed in the appendix to the rules applicable to Part IV, in order to supply to the jury some information concerning the statistical life expectancy of Mrs. Kappovich who at the time of the accident was 62 years of age. His endeavor encountered an objection by his adversary which the trial judge sustained. The trial judge doubted the admissibility of a life expectancy table to disclose information anent the probable period of the permanent continuity of pain and suffering and physical disability in aid of the estimation of compensatory damages. His ruling was erroneous.
We need not here measure the harmful and prejudicial potency of the error, but we cannot refrain from associating it with the incongruities of the awards to which our preceding references have been made.
The permissible use of an authentic life expectancy table in the trial of tort actions other than those for wrongful death has not been uncommon in recent years throughout the various jurisdictions. Vide our own decisions in Dickerson v. Mutual Grocery Co., 100 N.J.L. 118, 120 (E. & A. 1924); Hendershot v. N.Y.S. & W.R.R. Co., 5 N.J. Misc. 727, 732 (Sup. Ct. 1927), affirmed 104 N.J.L. 436 (E. & A. 1928); Graumann v. Ward, 7 N.J. Misc. 953, 954 (Sup. Ct. 1929).
So numerous are the applicable or pertinent decisions in other jurisdictions that counsel for the respondent is constrained to acknowledge in his brief that: "There is no doubt but that the prevailing view would justify the admission of the tables." True, such tables have been submitted for the aid of the jury chiefly in actions for wrongful death, commonly in determining the prospective loss of earnings, but also, for analogical reasons, in formulating an idea of the period of the duration of the ravages of pain and suffering.
*533 The materiality and relevancy of the information contained in the table to a prima facie established element of the compensatory damage in issue is the fundamental determination of the admissibility of the table in evidence. See, Annotations, 28 A.L.R. 1177, 1181 et seq.; 87 A.L.R. 910; 116 A.L.R. 416; 50 A.L.R.2d 419; 20 Am. Jur. 820, § 971; 15 Am. Jur. 779, § 339. We desire, however, to emphasize that the admission of such approved tables for the consideration of the jury should always be accompanied by cautionary instructions concerning their inconclusive import and limited significance.
In recognition of the state of the evidence and of the erroneous ruling in the present case, we feel impelled to conclude that to decline to afford to the plaintiffs a retrial confined to a more deliberate determination of damages would be clearly and convincingly a denial of justice. Hartpence v. Grouleff, 15 N.J. 545 (1954).
A new trial for that purpose is granted.