Edward J. RUSSELL

v.

CITY OF WILDWOOD, Appellant.

No. 18101.

United States Court of Appeals, Third Circuit.

Argued April 2, 1970.

Decided July 7, 1970.

Rehearing Denied. July 29, 1970.

Michael Patrick King, Kisselman, Devine, Deighan & Montano, Camden, N. J., for appellant.

James E. Beasley, Beasley, Albert, Hewson & Casey, Philadelphia, Pa., for appellee.

Before HASTIE, Chief Judge, and MARIS and ADAMS,* Circuit Judges.

### OPINION OF THE COURT
(Filed July 7, 1970)

MARIS, Circuit Judge.

The defendant, the City of Wildwood, New Jersey, appeals from a judgment entered in the District Court for the District of New Jersey on a verdict returned by a jury in the amount of $250,000.00 in an action brought for damages for personal injuries arising out of an accident which occurred on the beach in Wildwood on August 14, 1966. No attack is here made on the jury's finding that defendant's negligence was the proximate cause of the accident. The defendant seeks a new trial only on the issue of damages, contending that it was substantially prejudiced by two errors committed at the trial.

The first contention is that it was error for the trial judge, under the evidence, to permit the jury to determine whether the Wildwood accident aggravated a preexisting condition of bowel and urinary incontinence. The plaintiff was injured in the early morning of August 14, 1966 when a trash truck operated by the defendant's employees rode over the plaintiff while he was sleeping on the beach. At the trial the evidence

* Judge Adams heard the argument in this case but did not participate in its decision.

showed that he suffered a fracture of the right ilium, a comminuted fracture of the left clavicle with displacement, a fracture of the sternum, fractures of the left 5th, 6th, 7th, 8th and 9th ribs, a fractured left second costosternal junction, a contusion of the bladder, a mild partial sacroiliac deformity and a partial atelectasis of the lung. The plaintiff claimed that he was permanently disabled from pursuing his former employment as a line installer at Western Electric Company due to pain and weakness resulting from the multiple injuries and because of atrophy of his right leg and bowel and urinary incontinence, the latter causing emotional as well as physical disability in his everyday activities. The defendant, inter alia, denied causation of the bowel and urinary symptoms, claiming that if these conditions existed they were directly attributable to an automobile accident in October 1964 in which the plaintiff's spinal cord was injured and at which time, during convalescence and thereafter, he had incidents of urinary incontinence. The defendant argues that the issue was thus clearly drawn—the plaintiff attributing direct causation to the 1966 Wildwood accident and the defendant denying this claim and attributing causation only to the 1964 automobile accident. The defendant says that the trial judge's charge on aggravation of an existing condition inserted into the case a third theory on bowel and bladder incontinence for which there was no basis in the record. We cannot agree with this contention for even if the jury believed the defendant's contention that the 1964 accident directly caused the plaintiff's incontinency, there was evidence also to support a finding that the condition worsened after the 1966 accident.

The record shows that the plaintiff had been involved in a serious automobile accident in October 1964, as a result of which his employer, Western Electric Company, granted him a leave of absence. He was reexamined from time to time by the company physicians and as of December 6, 1965 was reinstated to return to his regular duties as a line installer with no restrictions. Following the Wildwood accident in August 1966 the plaintiff's employer again granted him a disability leave of absence but after he was reevaluated in November 1967 it was determined that he was unable to climb, lift, push, pull or tug and his employment was terminated as of October 23, 1966 for failure to meet physical requirements.

At the trial, physicians who had treated the plaintiff after the first and second accidents testified, and physicians, expert in various fields, who had examined the plaintiff at the defendant's request also testified. It appears from the evidence that the plaintiff did have some urinary problems after his first accident but that this problem was almost cleared up by the time of the second accident. In fact, there is no suggestion that such a condition interfered with the performance of his duties after plaintiff had returned to work in December 1965 after the first accident. There was evidence to support a determination by the jury that the plaintiff suffered bowel and urine incontinence after the second accident and up to the time of trial, from which evidence it was reasonable to infer that the plaintiff's then present condition was caused by the 1966 accident —either as a new condition or as an aggravation of a dormant or preexisting condition. The plaintiff testified that following the 1966 accident he could only work where he had immediate access to washroom facilities. The fact that the precise words "aggravate" or "worsen" were not used by the plaintiff and the fact that the plaintiff urgently sought to show that the 1966 accident was the direct cause of his condition did not alter the fact that there was evidence attributing this disability of the plaintiff originally to the 1964 accident and its aggravation to the one in 1966. The authorities cited by the defendant accordingly do not support its contention that the trial judge's charge on aggravation created a new issue in the case which was required to be medically established.

It is settled that a wrongdoer is liable for all the harm caused by his negligent act even though it be increased because of an unknown physical condition which could not have been discovered or anticipated prior to the wrongdoing. Restatement 2d, Torts, § 461. The rule is that where an injured plaintiff experiences pain and suffering from a preexisting infirmity to which he would not have been subjected except for the negligent act of the defendant, the added pain and suffering is to be considered by the jury in ascertaining damages. Spinning v. Hudson & Manhattan R. Co., 1951, 11 N.J.Super. 333, 78 A.2d 284, 286. Suffice it to say that in the present case there was evidence to sustain a jury finding that the 1966 Wildwood accident caused an aggravation or lighting up of a preexisting condition resulting from the 1964 accident. We conclude that the defendant's contention that the trial judge erred in charging on aggravation is wholly without merit.

The defendant's remaining contention is that the verdict was wholly speculative and without any support in the evidence insofar as it included an award for loss of future earnings. This contention is based upon the fact that the jury were given no guide, whether by way of mortality tables, expert testimony or otherwise, as to the way in which they should determine the present worth of the plaintiff's alleged loss of future earnings. To this question we now turn.

At the time of trial the plaintiff's earning potential as a line installer was shown to be $8,700.00 annually; his earning capacity as a bartender, which he testified was the type of work which he was able to perform under his disabilities, was $5,000.00 annually. At the time of the Wildwood accident the plaintiff was 23 years of age; at the time of trial he was 26 years old. Under the United States life expectancy tables,

which plaintiff's counsel read into the record,[1] the plaintiff then had a life expectancy of 45.6 years.

In the course of his summation to the jury, the plaintiff's counsel argued that in respect of loss of future earnings the plaintiff, on the basis of his life expectancy, "would have been able to accumulate during his lifetime by way of earnings three hundred and thirteen thousand dollars"; that if the plaintiff "works every day for the next thirty-nine years at that bar" he would be "losing one hundred and forty-eight thousand dollars"; that "This figure, a hundred and forty-eight thousand dollars, would have to be reduced to present worth. * * * So that if you figure at a minimum figure of future loss of earnings of one hundred forty-eight thousand dollars, which is reduced to present worth, as the Judge will explain to you, then you add that figure on the past loss of earnings." He illustrated his argument with charts tabulating the plaintiff's total out-of-pocket expenses, including medical expenses and loss of income to time of trial, totaling $13,488.28, showing calculations of the total amount of salary which plaintiff would have earned had he remained at his employment at Western Electric, $313,000.00, less the total future earnings as service bartender, showing a net future loss of earnings in the approximate sum of $148,000.00.

The trial judge in his charge to the jury on this aspect of the case stated:

"During the course of the plaintiff's closing argument to you, comment was made concerning future loss of wages. But this argument and these figures on the blackboard submitted to you are not conclusive and do not control you; they are merely a guide.

"Here again, as in life expectancy, there are a great many elements, known and unknown which should en-

---

1. Counsel read from the United States Life Tables, Volume II, Section V, prepared by the United States Department of Health, Education and Welfare, pages 5–8.

ter into your consideration in respect to future loss of wages. The plaintiff might have discontinued his employment at Western Electric and been engaged elsewhere, he might have earned more money, then again, he might have earned less. He might have lost time from work by reason of vacation, layoff time between job assignments, illnesses, strikes, and other contingencies of lost time to which employees of all kinds are necessarily subject, then again, he might not. All these uncertainties must be considered by you. There is no absolutely fixed rule. Here again you must be guided by your own common sense and your own good judgment.

\* \* \* \* \* \*

"Should you find that the plaintiff is entitled to a verdict, the amount of damages for future loss of earnings must be capitalized. By that is meant that your verdict shall be the present value of whatever future losses you may determine that the plaintiff will sustain, because you will now be giving one lump sum, if you should find for the plaintiff, whereas, any financial loss would, of necessity, be extended for a period of time as the plaintiff would have earned it. You would have to discount the loss, giving it its present worth.

"Present worth is merely a single sum of money which would be sufficient at a specified rate of interest to provide a certain amount of money each year for a specified number of years, and at the end of that time that fund would be entirely exhausted."

Counsel for the defendant objected to this portion of the charge as being inadequate in relationship to the proofs on future losses, stating: "As to the capitalizing of income, I think it is left up to speculation and conjecture because the plaintiff has not given any factor or anything on the present value of the dollar." An objection was also raised in respect to the charge on the question of aggravation of a preexisting condition, a matter we have already discussed. These objections were overruled.

The defendant argues that while the jury had before them a substantial claim for lost earnings they were given merely an abstract charge by the judge on the subject of the capitalization of that claim without any guidelines on which their judgment could be exercised. It contends that the plaintiff should have supported his claim for the present value of his future losses either by actuarial proof or other evidence from which the jury could have computed the present discounted value of the plaintiff's future lost earnings in a rational way. Since, says the defendant, the jury did not have before them any such evidence or instruction, their verdict, as to this element of the plaintiff's claim, must have been based on pure conjecture or speculation which rendered the entire verdict invalid. For the reasons which follow, we think the defendant is right in this contention.

While in this diversity case we must look to the law of New Jersey, a consideration of the opinion of the Supreme Court of the United States in Chesapeake & Ohio Railway Company v. Kelly, 1916, 241 U.S. 485, 36 S.Ct. 630, 60 L. Ed. 1117, will be helpful. In that case the Court pointed out [241 U.S. 489, 36 S.Ct. at 631–632] that "So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future." The Court, while it was not called upon to lay down a precise rule or formula, stated:

"We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by admitting the testimony of

expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest or for various periods covering the ordinary expectancies of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum." [241 U.S. 491, 36 S.Ct. 632].

▮ Prospective or future damages are at best not always easy or certain of ascertainment. They are to a large extent based on probabilities and uncertainties, Kimble v. Degenring, 1936, 116 N.J.L. 602, 186 A. 451, 452, and although it is sometimes said that a jury may use a "measure of speculation" in arriving at a verdict or an award of damages, sheer conjecture cannot be the basis of a jury finding. Dixon v. Pennsylvania Railroad Company, 3 Cir.1967, 378 F.2d 392, 394. The objective is to place the plaintiff in the same economic position as would have been his if the injury had not occurred. The task thus presented to the trier of the facts is a complicated one. In Brodie v. Philadelphia Transportation Company, 1964, 415 Pa. 296, 203 A.2d 657, 659–660, the court observed:

"Trial judges and lawyers freely admit that the application of the 'present worth rule' is beyond the understanding and capabilities of most lay persons serving on juries. In the very least, it is a tedious and laborious task. In some jurisdictions in the United States, the courts simply ignore the rule as hopelessly difficult for the jury to follow. * * * Likewise, the English and Canadian Courts ignore and reject it. * * *

"The involved process of reducing future losses to their present worth has, undoubtedly, led to confusion and guesswork verdicts. Reason, logic and fairness would, therefore, dictate that

enlightenment is necessary. Such can be provided, at least in part, by permitting the use of accepted tables or the testimony of a qualified expert, who can compose the proper computations. A precise, analytical calculation, properly supported by other evidence, will naturally reduce the confusion and greatly enhance the possibility of correct and just results. Verdicts based on speculation and emotional reactions will have less cause to occur. Moreover, the amount of future damages warranted by the evidence and the law in a given case is a mathematical fact. There is no logical reason why it should not be established by proof like other relevant facts.

"We hasten to caution trial courts, however, that adequate and careful instructions in the use of such evidence should be given to the jury. It should be pointed out, inter alia, that such evidence is not conclusive but merely an aid to assist them in determining the present value of any future damages determined to be due; that there is a marked difference between life expectancy and work expectancy; that the health, habits and occupation of the person involved are important factors in determining his life work expectancy, as well as his expected life span; that a person's earnings may cease or be curtailed by illness, accident or other causes aside from death, and that with increased age earnings, in most instances, also decline. * * *"

▮ It is settled that the jury's award in respect of this element of damages should be equivalent to compensation for the deprivation of pecuniary benefits reasonably expected to result from the continued earning capacity of an injured plaintiff where the evidence supports the contention that the claimed injuries are of a permanent nature.[2] As the Court pointed out in the Kelly case,

2. Lambert v. Trenton & Mercer County Traction Corp., 1926, 103 N.J.L. 23, 135 A. 270; Auer v. Sinclair Refining Co., 1927, 103 N.J.L. 372, 137 A. 555, 557; Noa v. Le Gore, 1944, 131 N.J.L. 229, 35 A.2d 691, 695.

the measure of damages as to loss or impairment of future earnings is the present cash value of the loss or impairment which the evidence shows with reasonable certainty will result from the injury. This is to be calculated at a net rate of interest at which money can be safely invested as shown by the evidence, the rate to be determined by the trier of the facts.[3]

The New Jersey courts have consistently applied this principle.[4] In Budd v. Erie Lackawanna R. R. Co., 1967, 98 N. J.Super. 47, 236 A.2d 143, 146, 147, the court said:

"R.R. 4:45A[5] provides that the tables of mortality and life expectancy as set forth in the appendix to the rules shall be admissible in evidence as *prima facie* proof of the facts contained therein. The table of life expectancy referred to indicates average life expectancy and is based upon the so-called United States Life Tables, 1959–61, as published by the United States Department of Health, Education and Welfare in December 1964. The tables of mortality which precede it in the rules furnish the present value of an annuity of $1 at $3\frac{1}{2}\%$ interest based upon the same table of life expectancy. Prior to adoption of the present rules a somewhat similar table mortality was contained in former Chancery Rule 184. In general, such tables, or testimony based thereon, have been held to be admissible in actions by personal representatives for wrongful death, Camden and Atlantic R. R. Co. v. Williams, 61 N.J.L. 646, 40 A. 634 (E. & A. 1898), and in suits

for personal injuries where the evidence supports the contention that the claimed injuries are of a permanent nature. Dalton v. Gesser, 72 N.J.Super. 100, 116–117, 178 A.2d 64 (App. Div.1962) ; Kappovich v. LeWinter, 43 N.J.Super. 528, 532–533, 129 A.2d 299 (App.Div.1957), certification denied 24 N.J. 112, 130 A.2d 914 (1957).

\* \* \* \* \* \*

"It thus appears that when accompanied by cautionary instructions, the table may be used regardless of decedent's state of health. \* \* \*"

■ Thus, in New Jersey life expectancy and mortality tables are admissible, when relevant and material, for the purposes of showing the average expectancy of life and the present value of the alleged loss of income based on that expectancy—subject to precautionary instructions explaining and limiting the evidential force of the tables since they merely serve as guides to assist the jury *in reaching their verdict.*

We turn then to the defendant's contention that *it was prejudicial error to* submit the case to the jury without any guide by way of tables or other evidence to enable them to reduce the plaintiff's substantial claim for future lost earnings to its present worth. The plaintiff urges that he was under no obligation to introduce an actuarial table or expert testimony on this question because under the law of New Jersey such evidence is merely "permissible."[6] But we think that the plaintiff begs the question. For the issue presented here is not what abstract obligation the plaintiff had under any and all circumstances to present

3. Vicksburg and Meridian Railroad Company v. Putnam, 1886, 118 U.S. 545, 554, 7 S.Ct. 1, 30 L.Ed. 299; Louisville & Nashville R. Co. v. Holloway, 1918, 246 U.S. 525, 528, 38 S.Ct. 379, 62 L.Ed. 867; Gulf, Colorado & Santa Fe Railway Company v. Moser, 1927, 275 U.S. 133, 48 S.Ct. 49, 72 L.Ed. 200.

4. Camden & Atlantic R. R. Co. v. Williams, 1898, 61 N.J.L. 646, 40 A. 634; Dickerson v. Mutual Grocery Co., 1924, 100 N.J.L. 118, 124 A. 785; Hendershot v. New York, S. & W. R. Co., 1927, 5

N.J.Misc. 727, 138 A. 206, 208; Kappovich v. Le Winter, 1957, 43 N.J.Super. 528, 129 A.2d 299, 301.

5. Now Rule 1:13–5 of the Rules Governing the Courts of the State of New Jersey, which provides: "The tables of mortality and life expectancy printed as an Appendix to these rules shall be admissible in evidence as prima facie proof of the facts therein contained."

6. Matthews v. Nelson, 1959, 57 N.J.Super. 515, 155 A.2d 111, 113–114,

tables or other evidence, but rather whether, having presented the life expectancy table, upon the basis of which he illustrated to the jury how they could determine the plaintiff's gross future earnings to be approximately $148,000.00, it was sufficient for him merely to tell them that this sum was to be reduced by them "to present worth, as the Judge will explain to you." The plaintiff contends that the principle of reduction to present worth must be stated to the jury by the trial judge in his charge. With this we agree. Trent v. Atlantic City Electric Co., 3 Cir.1964, 334 F.2d 847. We point out, however, that in the Trent case there was evidence presented to the jury in the form of actuarial and life expenctancy tables upon which such a charge could be predicated. Here, however, there was no evidence as to what interest could be fairly expected from safe investment which a person of ordinary prudence, but without particular financial experience and skill, could make, nor was any guidance given to the jury as to the method of computing, on the basis of that interest rate, the present value of the plaintiff's total future earnings loss as determined by them. The determination of the appropriate interest rate and the computation of present value on the basis of it involved facts and mathematical procedures of which the jurors could not be assumed to have personal knowledge from their own prior experience. They were, therefore, entitled to receive evidence and appropriate mathematical guidance with respect to these matters if they were to act rationally and not upon mere conjecture or guess. Guidance as to the mathematical computation could have been through the testimony of a mathematical expert or through tables or formulas of which the court could have taken judicial notice.

Here the trial judge properly defined "present worth" but he left the determination of that sum to the jury without any evidence or guidance as to how they were to compute it. The jury found a general verdict for the plaintiff in the single sum of $250,000.00 which presumably included the proven damages, an award for pain and suffering and an award for loss of future earnings. In the absence of any evidence or other guidance as to how they were to compute the present worth of the plaintiff's loss of future earnings we can only conclude that this portion of the jury's verdict was based upon sheer conjecture. Under the circumstances, the award of damages cannot stand and the case must be remanded for a new trial limited to the issue of damages.

The judgment of the district court will be vacated and the cause remanded for a new trial on the issue of damages only.