Brodie *v.* Philadelphia Transportation
Company, Appellant.

Argued May 4, 1964. Before BELL, C. J., COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James Conwell Welsh,* for defendant, appellant.

*James Edwin Beasley,* with him *Sheldon L. Albert, Boris Shapiro, Marvin R. Halbert,* and *Halbert & Kanter,* for appellees.

*Arthur M. Harrison,* with him *Walter Lazaroff,* and *Bernstein, Bernstein, Levy & Harrison,* for appellees.

OPINION BY MR. JUSTICE EAGEN, October 7, 1964:

On January 23, 1960, at a street intersection in the City of Philadelphia, a violent collision occurred between a trolley car, owned and operated by the Philadelphia Transportation Company (Company), and an automobile operated by Sylvia Waxler, in which Sylvia Brodie was a guest passenger.

Sylvia Waxler, alleging that the collision and resulting injury were due to the negligent operation of the trolley car, sued Company for damages, in which action her husband, Norman, was also named as a party plaintiff.

Sylvia Brodie and her husband, Maurice, instituted a similar action against Company. In this suit, Sylvia Waxler was later joined as an additional defendant. Sylvia Brodie died on April 2, 1960, from injuries received in the accident, and proper substitution of her personal representative, as party plaintiff, was made of record.

The cases were consolidated for trial, at which verdicts were returned against Company alone in favor of all plaintiffs in the following amounts: Estate of Sylvia Brodie, $115,000; Maurice Brodie, $20,000; Sylvia Waxler, $45,000; Norman Waxler, $20,000. Post trial motions were dismissed by the court en banc below, and from judgments entered on the verdicts appeals were filed in this Court.

Appellant first contends that Sylvia Waxler, under her own testimony, was guilty of contributory negligence as a matter of law, and it is, therefore, entitled

to judgment notwithstanding the verdict in the Waxler action. This question need not detain us since an examination of the record is persuasive that the question was for the jury's determination. However, we are convinced that trial error requires the grant of a new trial.

A police officer connected with the Accident Investigation Division was called as a witness. He did not see the occurrence and arrived at the scene approximately two hours later. He testified to what he observed as to physical markings on the roadway in the area of the collision. Over objection, Waxlers' counsel was then permitted on cross-examination to elicit from the witness an opinion that at the time of the occurrence, the trolley car was traveling at a rate of speed of thirty-five miles per hour, was not under control, and traveling too fast for conditions. Aside from the fact that the cross-examination was beyond the scope of the matters testified to on direct examination, the opinion expressed was grossly speculative and an invasion of the jury's exclusive prerogative. See, *Smith v. Clark,* 411 Pa. 142, 190 A. 2d 441 (1963). While this improper evidence resulted from examination by Waxlers' counsel only, it tainted the verdict in all actions and could well have been the basic factor influencing the jury's determination of the liability question. It was sufficiently prejudicial to warrant a retrial.

Since the actions must be retried, another important issue requires discussion.

Upon the date of the accident, Sylvia Brodie, 42 years of age, was on her way to work at the Albert Enstein Medical Center, where she was employed as a practical nurse.

The directress of nurses at the medical center testified that Mrs. Brodie began her employment with the institution as a part-time employee in the year 1954,

earning $1.50 an hour; that at the time of the accident, she was employed full time, receiving a salary of $304.50 per month; that increases in the pay scales of registered nurses is part of the center's policy, had been followed in previous years and could reasonably be expected to continue in the future. The witness detailed these increments, which indicated that if Mrs. Brodie had lived and continued in her employment until July 1962, the date of the trial, her salary would be $355.67 per month, and in July 1970, would amount to $458.83 per month. She further testified that there was a continued evaluation of performance by the hospital of one engaged in the work performed by Mrs. Brodie, and that the subject's ratings were excellent. Finally, this witness stated that there was no compulsory retirement age for one engaged in this class of work.

The plaintiffs then offered in evidence the testimony of an actuarial expert. He testified that Mrs. Brodie had a life expectancy of 33.28 years, based on accepted mortality tables; he explained "present worth" and illustrated how it should be determined in the instant case, assuming the decedent worked her full life expectancy. A blackboard was used in these illustrations and the calculations were first done on the basis that the decedent's salary at the time of the accident would remain constant, and secondly, on the basis that she would receive the expected increases in her salary as testified to by the directress of nurses. In making these computations, the expert witness used both a six and four per cent interest rate. To permit this constituted error. In Pennsylvania in reducing future damages to their present worth, the interest must be computed simply and at the lawful rate of six per cent only: *Gregorius v. Safeway S. Scaffolds Co.,* 409 Pa. 578, 187 A. 2d 646 (1963).

The question also necessarily arises: Should the illustrations of the present worth calculations have been admitted in evidence at all?

Before the year 1926, tables showing the present worth of a dollar payable at a fixed date in the future were admissible evidence in proper cases in Pennsylvania courts. See, *Seeherman v. Wilkes-Barre Co.*, 255 Pa. 11, 99 A. 174 (1916), and *Faber v. Gimbel Brothers*, 264 Pa. 1, 107 A. 222 (1919). However, in *McCaffrey v. Schwartz*, 285 Pa. 561, 132 A. 810 (1926), this Court re-examined the question and ruled out their use. It expressed the fear that since such calculations did not include the consideration of several factors, including the gradual decline with age in the decedent's earning capacity, the result in any given case would be inaccurate. This position was reaffirmed in *Thirkell v. Equit. Gas Co.*, 307 Pa. 377, 161 A. 313 (1932). But, in subsequent decisions, the use of concrete illustration by the trial court in the charge explaining "present worth" was approved. See, *McKinney v. Pittsburgh Rwys. Co.*, 363 Pa. 368, 69 A. 2d 83 (1949). And, it was also held that present worth tables could be used by the court in determining the excessiveness of a verdict. See, *Murray v. P.T.C.*, 359 Pa. 69, 58 A. 2d 323 (1948).

While present worth tables were not used in the instant case, it is candidly admitted by counsel that the actuary's testimony was in the same mould and had the same effect. We are, therefore, prompted to reconsider the ruling in *McCaffrey*.

Trial judges and lawyers freely admit that the application of the "present worth rule" is beyond the understanding and capabilities of most lay persons serving on juries. In the very least, it is a tedious and laborious task.[1] In some jurisdictions in the Unit-

---

[1] This is particularly true in actions by personal representatives of a decedent's estate, authorized by the Act of July 2, 1937, P. L. 2755, as amended, 20 P.S. §320.603.

ed States, the courts simply ignore the rule as hopelessly difficult for the jury to follow. See, Oleck, Damages to Persons and Property (1961), §75 and cases cited. Likewise, the English and Canadian Courts ignore and reject it. See, 28 A.L.R. 1181 (1924); 15 Am. Jur. Damages, §74, and *Cunningham v. Pennsylvania R. Co.*, 55 F. Supp. 1012 (1944).

The involved process of reducing future losses to their present worth has, undoubtedly, led to confusion and guesswork verdicts. Reason, logic and fairness would, therefore, dictate that enlightenment is necessary. Such can be provided, at least in part, by permitting the use of accepted tables or the testimony of a qualified expert, who can compose the proper computations. A precise, analytical calculation, properly supported by other evidence, will naturally reduce the confusion and greatly enhance the possibility of correct and just results. Verdicts based on speculation and emotional reactions will have less cause to occur. Moreover, the amount of future damages warranted by the evidence and the law in a given case is a mathematical fact. There is no logical reason why it should not be established by proof like other relevant facts.

We hasten to caution trial courts, however, that adequate and careful instructions in the use of such evidence should be given to the jury. It should be pointed out, inter alia, that such evidence is not conclusive but merely an aid to assist them in determining the present value of any future damages determined to be due; that there is a marked difference between life expectancy and work expectancy; that the health, habits and occupation of the person involved are important factors in determining his life work expectancy, as well as his expected life span; that a person's earnings may cease or be curtailed by illness, accident or other causes aside from death, and that with increased age earnings, in most instances, also

decline. In survival actions, the jury should also be instructed, that where recovery is given for the probable future earnings of the decedent's work expectancy, the total sum of such earnings must first be reduced by subtracting therefrom, that portion thereof which the decedent would have provided for his wife and children, and also by diminishing therefrom that portion thereof which he probably would have used for his own maintenance during the period involved: *Skoda v. W. Penn Power Co.*, 411 Pa. 323, 191 A. 2d 822 (1963).

In view of our present conclusions, *McCaffrey,* supra, is overruled. It is also noted that the rule of evidence now enunciated is followed in several other jurisdictions. See, 79 A.L.R. 2d 259 et seq. (1961).

Judgments reversed and new trial ordered.

Mr. Justice ROBERTS would not require the use of a fixed 6% interest rate in arriving at present worth. He believes that a 6% interest return is not commonly available for such funds, and would therefore hold instead that the interest rate to be employed should be the prevailing rate, to be established by proof.