John J. HADDIGAN, Administrator of the Estate of Margaret M. Haddigan, Deceased,

v.

Cornelius J. HARKINS and William Thomas Baker

v.

Thomas W. HADDIGAN, Third-Party Defendant,

Cornelius J. Harkins, Appellant in 18,341,

William Thomas Baker, Appellant in 18,342,

Thomas W. Haddigan, Third-Party Defendant, Appellant in 18,343.

Nos. 18341–18343.

United States Court of Appeals, Third Circuit.

Nov. 23, 1970.

As Amended and Rehearings Denied Jan. 19, 1971.

digan for rehearing and Van Dusen, Circuit Judge, dissented from denial of petition of William Thomas Baker for rehearing.

Aldisert, Circuit Judge, dissented from denial of petition of John J. Had-

Milford J. Meyer, Meyer, Lasch, Hankin & Poul and James J. McEldrew, Cole, McEldrew, Hanamirian & McWilliams, Philadelphia, Pa., for Cornelius J. Harkins.

Lowell A. Reed, Jr., Rawle & Henderson, Philadelphia, Pa. (David L. Steck, Philadelphia, Pa., on the brief) for William Thomas Baker.

William B. Freilich, LaBrum & Doak, Philadelphia, Pa. (Joseph R. Livesey, James M. Marsh, Philadelphia, Pa., on the brief) for Thomas W. Haddigan.

Benedict A. Casey, Jr., Beasley, Albert, Hewson & Casey, James E. Beasley, Philadelphia, Pa., for John J. Haddigan, Administrator of the Estate of Margaret M. Haddigan, Deceased.

Before STALEY, SEITZ and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from a final judgment entered on a jury verdict in a diversity negligence case. The case arises out of a three car accident which occurred on Route 1 in Bucks County, Pennsylvania, on January 5, 1963. Margaret Haddigan was a passenger in the car driven by her husband, Thomas W. Haddigan. In the accident she suffered severe personal injuries from which, in less than two hours, she died. On December 31, 1963 her administrator, a New Jersey resident, filed suit against Cornelius J. Harkins, driver of the second car, and William T. Baker, driver of the third car involved in the accident. He sought damages for pecuniary loss suffered by survivors of the decedent under the Pennsylvania Wrongful Death Act, 12 P.S. § 1601 (1953), and dam-

ages for her estate under the Pennsylvania Survival Act, 20 P.S. § 320.601 (1950), for the present worth of the earning power of decedent during her life expectancy, and for her pain and suffering while she survived.

Harkins, who was also severely injured in the accident, filed a cross-claim against Baker for contribution and for his personal injuries. He also filed a third-party complaint against Haddigan, the driver of the car in which plaintiff's decedent was a passenger, for contribution and for his personal injuries.

Haddigan, who was also severely injured in the accident, filed cross-claims against Harkins and Baker for contribution and for his personal injuries.

Baker, who fortunately was not injured, filed cross-claims for contribution against Harkins and Haddigan.

The same insurance company insured both Haddigan and Harkins. The attorney for the plaintiff filed on Haddigan's behalf his personal injury crossclaim, while an attorney furnished by the insurer filed his answer and cross-claim for contribution. Harkins, too, had an attorney as a personal injury cross-claimant and a separate attorney as defendant and cross-claimant for contribution.

Following the typical course of discovery and pretrial motions the case was reached for trial on January 10, 1968, five years and five days after the accident. The trial consumed ten trial days. The jury verdict on special interrogatories resulted in a judgment in favor of the administrator and against Harkins and Baker on the wrongful death claim for $64,754.30, and on the survival claim for $7,500. Neither Harkins nor Haddigan recovered for their personal injuries. Because Haddigan was found to be negligent the judgment excluded him from sharing as a beneficiary in the wrongful death recovery. Each crossclaimant was held to be entitled to contribution. Thus the insurer for Baker was liable for one-third, and the common insurer for Harkins and Haddigan for two-thirds of the total of $72,254.30.

As might be expected, the result satisfied no one except the plaintiff administrator. Each of the other parties in their varying capacities made appropriate motions pursuant to Rule 50 and Rule 59, Fed.R.Civ.P., advancing numerous objections with respect to rulings on evidence, the weight or sufficiency of the evidence, the court's charge, the interrogatory submitted to the jury, and the result; principally the latter. These objections were briefed and the district court heard argument on them on December 27, 1968. On September 17, 1969, 304 F.Supp. 173, it filed a lengthy opinion in which it considered all allegations of error which had been timely raised, and rejected each of them. The unsuccessful parties found that opinion to be no more satisfactory than the judgment. Every party except the plaintiff administrator appealed in each capacity, and this court has had the benefit of a nine hundred seventy-two page appendix and ten separate briefs, some of which were helpful.

The allegations of error relate both to liability and to damages. The liability aspect will be treated first.

These facts are undisputed: Haddigan was driving south on Route 1, a four lane highway on which the northbound and southbound lanes are divided by a medial concrete divider 32 inches wide and 12 inches high. He lost control of his car, which swerved to the left, from the right hand southbound lane up onto the medial divider and protruding into the left hand northbound lane. Harkins was driving north on Route 1 in the left hand northbound lane. Baker was driving north on Route 1 in the right hand northbound lane. It was dark. There was a crash in which all three cars were involved in some manner. There was no obstruction to visibility from the point where the Haddigan car crossed the medial divider to a point in excess of one hundred fifty yards south on Route 1. Both Haddigan and the decedent were thrown from their car. When the cars came to rest after the impact, Harkins' car was somewhat to the north of the

other two, severely damaged in the left front area. Haddigan's car was in the left hand northbound lane near the point where it crossed the medial barrier, facing north, and severely damaged in the right front and right side areas. Baker's car, facing north, was in close proximity to Haddigan's. Mrs. Haddigan was underneath Baker's car.

## BAKER'S NEGLIGENCE

■ In seeking a reversal, Baker contends that under Pennsylvania law there was insufficient evidence to support a finding of negligence. He contends that there was no evidence that at any time up to the impact there was a geometric line of sight from him to the Haddigan car astride the median barrier. This, he argues, would place him within the rule of Adley Express Co. v. Willard, 372 Pa. 252, 93 A.2d 676 (1953), and Hughes v. Zearfoss, 194 Pa.Super. 408, 168 A.2d 628 (1961) that a driver in a four lane highway need not anticipate that a driver on the opposite side would cut across the divider. However, there is testimony that the Haddigan car was stopped, facing southward at an angle across the divider with its lights on and its engine stalled, for a half minute, and that Baker, riding at about thirty miles an hour side by side with Harkins, had an unobstructed view, during that time, of between one hundred and one hundred fifty yards, with unobstructed maneuvering room on the right hand paved shoulder of the road. We must assume that the jury believed this testimony.

Next, relying on Nixon v. Chiarilli, 385 Pa. 218, 122 A.2d 710 (1956), and Jones v. Williams, 358 Pa. 559, 58 A.2d 57 (1948), Baker contends that it was not negligence for him to fail to anticipate the negligence of Harkins. These cases are not apposite however, for while a driver may assume that another driver will stay in his own lane (Nixon v. Chiarilli) or that he will obey a traffic sign (Jones v. Williams) he may not disregard an observable extreme hazard. Sudol v. Gorga, 346 Pa. 463, 31 A.2d 119

(1943). There is testimony from which the jury could find that Baker continued forward in tandem with Harkins until it was too late for both to avoid the hazard presented by the protrusion of the Haddigan car into the left hand northbound lane. That testimony is also sufficient to dispose of Baker's next contention, that Harkins' negligence was the primary efficient proximate cause excluding his liability. This is not a case where Baker's "fault happen(s) to concur with something extraordinary, and therefore not likely to be foreseen, * * *" Thubron v. Dravo Contracting Co., 238 Pa. 443, 446, 86 A. 292, 293 (1913). Accepting, as we must, the testimony tending to show that he proceeded in tandem with Harkins for over a hundred yards toward an observable hazard, the resulting accident was hardly an improbable and unlikely consequence of Baker's negligence. Cases such as Whitley v. Philadelphia Transportation Co., 211 Pa.Super. 288, 234 A.2d 922 (1967); Coyne v. Pittsburgh Ry., 393 Pa. 326, 141 A.2d 830 (1958); and Vereb v. Markowitz, 379 Pa. 344, 108 A.2d 774 (1954) and more in point than Stone v. City of Philadelphia, 302 Pa. 340, 153 A. 550 (1931) or Thubron v. Dravo Contracting Co., supra, on which Baker relies.

■ Relying on the strange case of Eckley v. Seese, 382 Pa. 425, 115 A.2d 227 (1955) and on Haldeman v. Bell Telephone Co. of Pennsylvania, 387 F.2d 557 (3 Cir. 1968), Baker suggests that we should reverse because the proof of causation of decedent's injuries was at best evenly balanced in that plaintiff did not show which car, his or Harkins', caused the massive head and internal injuries from which she died. Haddigan was unable to recall the exact sequence of events which occurred in the microseconds elapsing between the time Harkins' car first made contact and the time his wife came to rest beneath Baker's car. Apparently because of his injuries, which included a fractured skull, he remembered nothing after her scream of warning as he tried to start his stalled car. But Baker's deposition, read into

evidence in plaintiff's case, contains this admission:

Q. Did your vehicle cross over or run over any object?

A. I understood, yes.

Q. What was that?

A. This Mrs. Haddigan.

There was, in addition, evidence of a dent in the left front hood of Baker's car, which would be consistent with it striking the decedent as she was ejected from her car. If this was not ample for a jury question, Baker on direct examination in his own case testified:

Q. And as far as you know from your personal observations, did your automobile run over Mrs. Haddigan?

A. From my personal observations?

Q. Yes.

A. Well, I see no other way she could have got under there. I must have run over her.

Baker would have us rule, apparently, that granting his car gave the decedent a whack and that in the same accident another car almost simultaneously gave her another whack, plaintiff must prove which whack killed her. Such is not the law. Cleaves v. Robinson, 242 F.2d 147 (3 Cir. 1957); Vereb v. Markowitz, *supra;* Atkinson v. Coskey, 354 Pa. 297, 47 A.2d 156 (1946); Neubert v. Sichel, 333 Pa. 90, 3 A.2d 778 (1939).

■ Baker further contends that he was prejudiced on the liability part of the case by the failure of the trial court to require plaintiff's counsel to read all relevant parts of Baker's deposition in plaintiff's case. See Rule 26(d) (4), Fed.R.Civ.P. We have reviewed the transcript, the lengthy colloquy in which this issue was discussed, and the parts which were eventually read. Counsel for Baker permitted plaintiff's attorney to read into the record seventeen separate segments of the deposition, all that he intended to offer, before raising the issue. Thereafter in the presence of the jury, in raising this issue, he accused counsel for the plaintiff of presenting a distorted picture. When the judge offered to permit the immediate reading of additional parts with an explanation to the jury that there had been no impropriety on the part of plaintiff's counsel, Baker's attorney would not agree to such an explanation. The judge then let the plaintiff's case proceed, and the desired parts were not read until later in the trial. Under all the circumstances the district court exercised an appropriate discretion.

Finally, Baker contends that the court's charge insufficiently related the evidence to the law, as required by Mc-Nello v. John B. Kelly, Inc., 283 F.2d 96 (3d Cir. 1960). We have reviewed the charge and we reject this contention. Although the pleadings were complex, the factual issues were relatively simple. The court's charge on liability was adequate. Apparently counsel once thought so, since no *McNello* objection was made at the time.

## HARKINS' NEGLIGENCE

■■ Harkins contends that he was confronted with a sudden emergency when Haddigan's car crossed the median divider, suddenly without stopping, too late for evasive action on his part. His principal reliance is on Antonson v. Johnson, 420 Pa. 558, 218 A.2d 123 (1966), and Skrutski v. Cochran, 341 Pa. 289, 19 A.2d 106 (1941). These cases deal with the situation where a driver is suddenly confronted with the presence of a person in an unexpected place at a time when no steps can be taken to avoid a collision. They would control if we accept Harkins' version of the facts. He would have us find that it was impossible for Haddigan's car to be poised on the median divider for half a minute. But Haddigan so testified, and the jury apparently believed him. That testimony, coupled with the testimony of the witness Hart that Harkins and Baker were one hundred to one hundred fifty yards away when the Haddigan car got hung up on the medial divider, are ample support for the jury's verdict that Harkins was negligent. The jury answered interrogatory

1(a), "Was Mr. Harkins negligent?" affirmatively. Harkins contends that this interrogatory cannot be the basis of a judgment that he was contributorily negligent insofar as his claim against Baker is concerned, because it was in some way limited by the jury's negative answer to another interrogatory. "Was such negligence a substantial contributing (a proximate) cause of (3) Mr. Baker's damage?" The latter interrogatory was actually surplusage, since Baker was not claiming to have suffered any damage. He sought only contribution. The court's charge on contributory negligence was specifically directed to Mr. Harkins' injuries, and was in conformity with Hamilton v. Fean, 422 Pa. 373, 378, 221 A.2d 309, 312 (1966). When the jury found all three drivers to be negligent the court correctly molded the verdict to bar Harkins' recovery against Baker for personal injuries and to permit recovery for contribution.

█ Harkins also contends that he was in some way prejudiced by the allegedly improper admission of the expert testimony of W. J. Halverson, an automobile repair man. Halverson gave his opinion that sudden failure in the steering mechanism of Haddigan's car caused the loss of control which resulted in that car crossing the median divider. That testimony tended to support Haddigan's contention that he was without fault as a result of a sudden emergency, and hence to support his cross-claim for his own personal injuries. The jury found against Haddigan on this claim, however, and in favor of Harkins on his claim for contribution. Even if the expert was not properly qualified, and his opinion testimony was technically inadmissible, we fail to see how this in any way prejudiced Harkins.

## HADDIGAN'S NEGLIGENCE

█ Haddigan's contention is that the jury verdict finding all three defendants negligent is internally inconsistent and cannot be allowed to stand. He points to the absolute conflict between his version of the accident and the versions testified to by Baker and Harkins. Since the jury in finding them negligent rejected their version, it must, he reasons, have accepted his. His version, supported by Halverson's testimony, was that a sudden mechanical failure caused his car to go out of control and, before he could take preventive action, mount the median barrier. The fallacy in this reasoning is twofold. First, the jury need not have accepted Halverson's opinion testimony. Second, the eyewitness Hart, in plaintiff's direct case, testified on cross-examination without objection:

Q. In your opinion from the observations that you made, could this car (Haddigan's) have stopped before it got to the medial strip by the application of its brakes?

A. It's possible, sure.

There was additional testimony tending to show an inordinate delay on Haddigan's part in applying his brakes. There is evidence in the record to support the jury's verdict that all three drivers were negligent.

## THE DAMAGES

█ The plaintiff was entitled to recover in the survival action damages for decedent's conscious pain and suffering and also the earnings the decedent would have made in her lifetime, less her probable cost of maintenance, reduced to present worth. Murray v. Philadelphia Transp. Co., 359 Pa. 69, 74, 58 A.2d 323, 325 (1948). On this claim the jury verdict was $7,500.00. Plaintiff was entitled to recover in the wrongful death action the present value of the services which decedent would have rendered to her family had she lived, less the probable cost of her maintenance during her life expectancy. Gaydos v. Domabyl, 301 Pa. 523, 533–534, 152 A. 549, 553 (1930). On this claim the jury verdict was $64,754.30, which included $1,444.30 in funeral and medical expenses. The defendants contend that both determinations lacked appropriate evidentiary support, that both were tainted by improperly admitted and improperly

excluded evidence, and that both were the result of an erroneous charge.

 The position most strenuously advanced is that it was error to exclude from the jury evidence of Mr. Haddigan's remarriage. This problem would not have arisen had the case been reached for trial in a reasonable time, since that remarriage did not take place until over three and one-half years after the accident. At the outset the district court ruled, preliminarily, that it would permit no reference to the remarriage. It stuck to that ruling throughout, even though defense counsel repeatedly contended that plaintiff's evidence, referred to hereinafter, made the fact of remarriage relevant and admissible. The ruling was in accord with long standing authority that in Pennsylvania rights of survivors in a wrongful death case are fixed at the moment of death, and remarriage cannot be considered in the assessment of damages. Philpott v. Pennsylvania R.R., 175 Pa. 570, 34 A. 856 (1896). See Schuler v. Berger, 275 F.Supp. 120 (E.D.Pa. 1967), aff'd, 395 F.2d 212 (3 Cir. 1968); Johns v. Baltimore & Ohio R.R. Co., 143 F.Supp. 15, 29 (W.D.Pa.1956), aff'd, 239 F.2d 385 (3 Cir. 1957); Worthington v. Elmer, 207 F. 306 (6 Cir. 1913). Defendants suggest that this rule is the result of misconceived public policies and should be overruled. Their argument to this effect is well worthy of consideration,[1] but not by us. A federal court in a diversity wrongful death action must take the law of Pennsylvania as it finds it. The district court properly excluded evidence of Haddigan's remarriage.

Next defendants urge that it was error to admit expert testimony on the economic value of services rendered by a wife and mother. Mr. Haddigan testified on direct examination that the decedent's services for her family included services each week as a cook, 17½ hours; as a dishwasher, 14 hours; as a dietician, 2 hours; as a baker, 3 hours; as a practical nurse, 1 hour; as a chambermaid, 7 hours; as a manager, 10 hours; as a seamstress, 5 hours; as a hostess, 2 hours; as a housekeeper, 16 hours; as a governess, 20 hours; as a recreation worker, 5 hours; as a handyman, 8 hours; as a laundress, 10 hours; and as a waitress, 5 hours. (This left her 42½ hours a week, or six hours a day for all her other activities including sleeping.) Plaintiff then produced a witness, Rosner, an employment agency proprietor who specializes in placement of domestics, dishwashers, cooks, etc. Rosner was asked, without objection, to give the hourly rates of pay commanded by each of the above mentioned employment categories as of 1963 and as of 1967. Then, totaling the hours and the wages, he valued decedent's services in 1963 at $173.25 a week, and in 1967 at $236.72 a week. The absence of any objection to this testimony would ordinarily preclude our consideration of its admissibility, but in view of the disposition we propose to make on damages, comment is appropriate.

 No Pennsylvania case has been called to our attention which discusses the admissibility in a wrongful death action of expert testimony such as Rosner's. Here, however, we are not bound by the strictures of Pennsylvania substantive law, for while admission of evidence of remarriage goes to the substantive measure of recovery, expert testimony as to value of services presents only an evidentiary question; how does one prove the value of lost services for whatever period of time recovery is proper? Thus we need not concern ourselves with how a Pennsylvania court would rule, but can look to federal authorities favoring admissibility. Rule 43(a), Fed. R.Civ.P. Expert opinion evidence as to the monetary value of lost services in a

---

1. The argument is that Pennsylvania should for reasons of fairness follow the English interpretation of Lord Campbell's Act which permits evidence of even the possibility of remarriage in mitigation of damages. Hall v. Wilson, 4 All E.R. 84 (1939); Mead v. Clark Chapman J. Co., 1 W.L.R. 76, 1 All E.R. 44 (1956) (C.A.).

wrongful death action has been approved in the federal courts. Schuler v. Berger, *supra*; Curnow v. West View Park Company, 220 F.Supp. 367, 373 (W.D.Pa. 1963), rev'd on other grounds, 337 F.2d 241 (3 Cir. 1964); Merrill v. United Air Lines, Inc., 177 F.Supp. 704 (S.D. N.Y.1959). Preferably admission of such testimony should be followed by a charge that the expert's opinion is only advisory, and that the jury should make its own determination of the economic value of decedent's lost services.

■ But, say the defendants, assuming there was evidence, properly admitted, to establish the value of decedent's services, the plaintiff offered little or no evidence of the cost which would have been incurred to maintain her while she performed those services. As one might expect, the attorney for plaintiff was considerably more enthusiastic in establishing the extent and value of the lost services than in establishing the cost of maintenance of decedent. There is, however, ample proof in the record from which the jury could make a fair determination. This is not a case of complete failure of proof of the cost of maintenance such as was before the court in Curnow v. West View Park Company, 337 F.2d 241 (3 Cir. 1964).

■ With respect to the survival action, the defendants contend that the court's charge, properly construed, permitted recovery of decedent's probable accumulations during her lifetime, a measure of damages impermissible under the Survival Act. Murray v. Philadelphia Transportation Co., *supra* at 74, 58 A.2d at 325, states the correct rule, limiting the recovery to earnings during life expectancy less probable cost of maintenance reduced to present worth. See McSparran v. Pennsylvania R.R., 258 F.Supp. 130, 136–138 (E.D.Pa.1966). The charge did at one point contain the forbidden word "accumulated," but in the context it referred to accumulated earnings less probable cost of maintenance, not to accumulations in the sense prohibited by *Murray*. This rule of damages might have been stated somewhat more clearly, and might more clearly have been related to the survival action rather than the wrongful death action. See Wiest v. City of Philadelphia, 200 Pa. 148, 49 A. 891 (1901). We would not, however, reverse on this ground were that the only issue raised, especially since the district court was not given the benefit of a contemporaneous objection that the earnings charge might mistakenly be applied to the wrongful death action.

■ The district court in its charge read plaintiff's Point for Charge No. 26(f) which is a quotation from Justice Musmanno's opinion in Spangler v. Helm's New York-Pittsburgh Motor Express, 396 Pa. 482, 485, 153 A.2d 490, 492 (1959) as follows:

> The loss of companionship, comfort, society, solace and protection is a loss for which a wrongdoer must pay.

Since there was no objection to this charge we would not, because of its use, reverse. Rule 51, Fed.R.Civ.P. We make reference to it in view of our ultimate disposition here, because as used, the language was objectionable. The charge would be improper for the survival action, and was not clearly limited to the wrongful death action. Moreover in Curnow v. West View Park Company, 337 F.2d 241 (3 Cir. 1964), this court cautioned that the trial judge should cautiously refrain from use of descriptive phrases which are likely to appeal to the emotions of the jurors even though such phrases are contained in the language of reported decisions. The quoted language also has the danger of conveying to the jury the misapprehension that in the wrongful death action the survivors can recover for mental suffering, grief, or loss of companionship. See Byrne v. Matczak, 254 F.2d 525, 530 (3 Cir. 1958); Ferne v. Chadderton, 363 Pa. 191, 197, 69 A.2d 104, 107 (1949); Gaydos v. Domabyl, *supra*, 301 Pa. at 531, 152 A. at 552.

■ Finally, we come to the two deficiencies which are of sufficient substance to require reversal. The first of these is that, having admitted into evi-

dence (P–18) the life tables published by the United States Department of Health, Education and Welfare, the court charged:

> Now, that exhibit shows that a person of Mrs. Haddigan's sex and age at her death had a normal life expectancy of 37.3 years.

That statement was clearly erroneous, for it is undisputed that the life expectancy for decedent's age at the time of her death was only 33.6 years. This error was called to the court's attention, but was not corrected. We cannot assume that the jury overcame the error by recollecting decedent's age and searching through exhibit P–18 for the correct information.

█ The second substantive defect is the complete absence of any actuarial evidence or guidance from which the jury could have made the calculation of present worth required by the damage charge in both the survival action and the wrongful death action. Having presented the life expectancy table and evidence of the weekly value of lost services, and having sought recovery of future earnings less cost of maintenance, plaintiff offered no evidence from which the jury could have made the computation of present worth. "They were \* \* \* entitled to receive evidence and appropriate mathematical guidance with respect to these matters if they were to act rationally and not upon mere conjecture or guess." Russell v. City of Wildwood, 428 F.2d 1176, 1183 (3 Cir. 1970). Both in New Jersey, where Russell v. City of Wildwood, *supra*, arose, and in Pennsylvania, actuarial proof of present worth is admissible, though perhaps not

mandatory. Matthews v. Nelson, 57 N.J. Super. 515, 155 A.2d 111, 114 (App.Div. 1959) ; Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A.2d 657, 659 (1964). *Russell* holds that such guidance will be required for juries in federal diversity cases arising under New Jersey substantive law, and we hold that the same guidance shall be required for juries in federal diversity cases arising under Pennsylvania substantive law.[2] The absence of such guidance and the court's erroneous instruction as to life expectancy compel reversal.

Thus, almost eight years after Mrs. Haddigan's death we are constrained, with the utmost reluctance, to postpone once again the payments of the reparations for her death to which her estate and her surviving children are legally entitled. It seems likely that before they are paid the expense to litigants, to the United States, and to jurors, of determining the amount to which they are entitled will have exceeded their net recovery. There must be a better way.

We have reviewed all the remaining allegations of error with respect to either liability or damages advanced by any party and find each to be without merit. The judgment of the district court will be vacated and the cause remanded for a new trial on the issue of damages only. Each of the parties will bear his own costs.

## SUR PETITION FOR REHEARING

Before HASTIE, Chief Judge, and STALEY, FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS, GIBBONS and ROSENN, Circuit Judges.

2. The absence of actuarial evidence of present worth was raised by the defendants prior to the court's charge. The charge on present worth was: "As to future lost earnings or lost services, you should reduce such sum as you may find to its present worth. That is, the value today of a sum to have been earned or paid in the future. To put it another way, you should reduce such total future earnings to a sum which, if put out at interest and paid in installments, would equal the value

of services you find the plaintiff would have been entitled to receive." No interest rate was given at the time of the charge on reduction to present worth. In a supplemental charge the court referred to the legal rate of 6% as required by Pennsylvania law. Murray v. Philadelphia Transportation Co., 359 Pa. 69, 74, 58 A.2d 323, 325 (1948) ; McSparran v. Pennsylvania Railroad Company, 258 F.Supp. 130, 140 (E.D.Pa.1968).

PER CURIAM.

The petition for rehearing filed by John J. Haddigan, Administrator of the Estate of Margaret M. Haddigan, Deceased, in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court en banc, the petition for rehearing is denied.

ALDISERT, Circuit Judge (dissenting).

I would grant the petition for rehearing because the decision of the panel makes mandatory in diversity cases governed by Pennsylvania substantive law the introduction of actuarial evidence for the purpose of reducing future losses to present worth. In Pennsylvania courts the introduction of such evidence is permissive only. Indeed, prior to the 1964 case of Brodie v. Philadelphia Trans. Co., 415 Pa. 296, 203 A.2d 657 (1964), its introduction had been prohibited by McCaffrey v. Schwartz, 285 Pa. 561, 132 A. 810 (1926).

I do not recognize any federal "affirmative countervailing considerations at work here," Byrd v. Blue Ridge Rural Elec. Coop. Inc., 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958) which would require or even justify the imposition of such a rule. Although Fed. R.Civ.Proc. 43 is designed to encourage the admission of evidence on as broad a scale as possible, I do not read this rule as making mandatory in diversity cases the reception of actuarial evidence which under state law is only permitted.

Indeed, even in federal question cases the admission of such evidence is not required. In Pennsylvania Railroad Company v. McKinley, 288 F.2d 262, 265 (6 Cir. 1961), an action under the Federal Employers' Liability Act, the court said:

It is clear that under the rulings of [cited cases], standard annuity tables, expert evidence as to earning power of money safely invested, and like testimony would be admissible. No case, however, has been cited to us from the federal or state courts which has held that such proof is essential.

See also Caldwell v. Southern Pacific Co., 71 F.Supp. 955 (S.D.Calif.1947).

Moreover, it is at least questionable whether the panel's decision here is reconcilable with our holding in a previous diversity case governed by Pennsylvania substantive law touching a related issue. Essential to any reduction to present worth in a wrongful death case is a determination of life expectancy. In the post-*Brodie* case of Tabor v. Miller, 389 F.2d 645, 647 (3 Cir. 1969), this court stated:

While mortality tables and technical data are admissible in Pennsylvania on the issue of life expectancy, *they are not required.* (Emphasis supplied.)

Thus, "the absence of any evidence, such as mortality tables or expert opinion, regarding life expectancy" did not render erroneous an instruction that the jury should consider plaintiff's life expectancy in computing damages.

The court here relies on our recent decision in Russell v. City of Wildwood, 428 F.2d 1176, 1183 (3 Cir. 1970), which required "evidence and mathematical guidance" in a diversity action even though reception of such evidence was permissible and not mandatory in a New Jersey state court. I would not, however, want to rest on the technical distinction that *Tabor* was a diversity case brought under Pennsylvania law while *Russell* was an action brought under New Jersey law. Rather, I believe that the panel's decision in *Russell* is inconsistent with the essential rationale of the panel's decision in *Tabor.*

Accordingly, in addition to the reasons heretofore set forth, because two decisions by panels of this court can be considered to be in conflict a rehearing be-

fore a court en banc should be had to resolve the inconsistency.

### SUR PETITION FOR REHEARING

#### PER CURIAM.

The petition for rehearing filed by William Thomas Baker, Appellant in 18,-342 in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

VAN DUSEN, Circuit Judge, dissents from the denial of the Petition for Rehearing of petitioner William Thomas Baker.