John **BALLANTINE**

v.

**CENTRAL RAILROAD OF NEW JERSEY**, Appellant.

No. 71–1076.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 1972.

Decided May 3, 1972.

Arthur R. Littleton, Morgan, Lewis & Bockius, Philadelphia, for appellant.

Lawrence E. Grant, Richter, Syken, Ross & Binder, Philadelphia, Pa., for appellee.

Before ADAMS and JAMES ROSEN, Circuit Judges, and STAPLETON, District Judge.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

This appeal from a general jury verdict entered in an F.E.L.A. case presents the sole question of whether the jury was given sufficient guidance to allow it to reduce future lost earnings to their present worth.

Plaintiff John Ballantine, a freight service employee of Central Railroad of New Jersey, was injured while at work on May 5, 1965 in Middletown, N. J. The accident occurred while plaintiff was releasing an admittedly defective brake on a boxcar. He was thrown from the brake step onto the ground, injuring his head and fracturing his wrist and elbow. Hospitalization was required, and lost work time approximated 20 months. Ballantine is presently working for Central as a passenger trainman.[1] At the time of trial, he was 42 years of age, and was earning approximately $6,250. per year less than he would have been earning had he remained in the freight service.[2] It was stipulated that the mandatory retirement age from the railroad is sixty-five

---

1. The residual effects of plaintiff's injuries prevent him from resuming his duties in freight service.

2. Appellant's Appendix, p. 4a.

years of age for both passenger and freight service employees.

Evidence was presented of loss of gross future earnings plus medical costs and of pain and suffering covering the initial injury and subsequent corrective treatment. Absent from the record is any testimony by an actuary on the method of reducing future earnings to present worth. Plaintiff did not introduce present worth tables. In his closing statement to the jury, plaintiff made no mention of the necessity of the jury to reduce future loss of wages in the amount they determined to their present worth.[3] At the close of trial, defendant requested the court not to charge the jury on future loss of wages, contending that there had been no evidence as to the manner in which it should be reduced to present worth.[4] The court denied defendant's motion and proceeded to charge the jury, including instructions on the concept of the present worth of future lost earnings. In explaining this principle, the court used a simplified 6% example of a one dollar debt to be paid one year later.[5] The jury returned a verdict of $180,000. Defendant filed a motion for new trial, and briefed the issue of whether or not the court's instruction on present worth was a proper and adequate charge. The motion was denied without opinion. This appeal followed.

3. Mr. Grant: " * * *
Now, that brings us only until today. Now John Ballantine today—today—is forty-two years old. It has been agreed by both sides that the mandatory retirement age on the railroad is sixty-five for both passenger and freight. He is a young man. He has a lot of living to do yet. He has twenty-three more years to work for the railroad.
* * * * *
Now, you multiply—and I am not talking about inflation or anything else. Forget about that; that's not important. You multiply twenty-three years times $6,250. a year less he is earning now than he would have been earning if he were still climbing boxcars and throwing switches and doing things like that on the freight service, and that comes to $143,750. Now let's talk about the future medical."
* * * * *
Appellant's Appendix, p. 4a.

4. The following discussion took place between court and counsel at side bar regarding the question whether the jury should be charged as to future loss of wages:
Mr. Littleton: In connection with the charge, I would move that there be no charge.
The Court: No what—?
Mr. Littleton: No charge as to future wage loss and reducing to net worth because there has been no evidence to enable this jury to reduce future wage loss to present worth. It would have to be pulled right out of the air and a guess and a conjecture how many dollars a year lost is worth now for how many years.

Mr. Grant: Sir, I think that's certainly a proper matter to leave up to the jury with proper instructions as to reducing to present value; but there need not be any evidence presented by anybody at all on that subject.
The Court: Well there is evidence that he is going to have pain as long as he lives.
Mr. Littleton: This relates to future wage loss.
The Court: Yes, and there is evidence that he can't do what he used to do as a freight conductor, and there is evidence as to diminution of earnings. Now there is evidence that that will continue as long as he lives. I think that there is enough there to warrant a charge.

5. "If we assume that a debtor will owe me a dollar one year from today and he hands me the dollar now, when the debt is not due, I can invest the dollar and to the end of the year when the debt is actually due I will actually have received $1.06, 6 cents more than the debt. Therefore, if he wishes to discharge the obligation now rather than wait until the end of the year, the debtor will hand me approximately 94 cents. Then, when I invest that sum at 6 percent interest I will have the full amount of the debt at the end of the year.

"In such a case as I have given you the 94 cents would be the present worth of the dollar due. This is precisely the process which is involved when you come to an award and award lost earnings in the future."
Appellant's Appendix, p. 7a.

The application of the present worth rule is generally conceded to be beyond the understanding and capabilities of most lay persons serving on juries. At the very least, it is a tedious and laborious task. The involved process of reducing future losses to present worth has, undoubtedly, led to confusion and guesswork verdicts. Reason, logic and fairness would, therefore, dictate that enlightenment is necessary. This court has already addressed itself to the need for such enlightenment in federal diversity cases.

In Russell v. City of Wildwood, 428 F. 2d 1176 (3rd Cir. 1970), the issue presented was whether it was legally sufficient for a plaintiff to introduce a life expectancy table in order to illustrate to the jury how they could determine the plaintiff's gross future earnings, without offering them further guidance on how to reduce those earnings to their present worth, other than to tell them that that sum was to be reduced by them "to present worth, as the Judge will explain to you." In *Russell* there was no evidence as to what interest could be fairly expected from safe investment which a person of ordinary prudence but without particular financial experience and skill could make, nor was there any guidance given to the jury as to the method of computing, on the basis of that interest rate, the present value of the plaintiff's total future earnings loss as determined by them. The court held that the jurors were entitled to receive evidence and appropriate mathematical guidance with respect to these matters if they were to act rationally and not upon mere conjecture or guess. Such guidance as to the mathematical computation could have been provided through the testimony of a mathematical expert or through tables or formulas of which the court could have taken judicial notice. "In the absence of any evidence or other guidance as to how they were to compute the present worth of the plaintiff's loss of future earnings, we can only conclude that this portion of the jury's verdict was based upon sheer conjecture."

In Haddigan v. Harkins, 441 F.2d 844 (3d Cir. 1970) actions were brought for wrongful death and survival by the administrator of the estate of a deceased automobile passenger against drivers of two other automobiles. At trial plaintiff sought recovery for lost future earnings less cost of maintenance, but offered no evidence from which the jury could have made the computation of present worth. The court held that the complete absence of any actuarial evidence or other guidance from which the jury could have made the calculation of present worth required by the damage charge in both the survival action and wrongful death action constituted a substantive defect requiring a remand of the case for a retrial of the damages. "They were * * * entitled to receive evidence and appropriate mathematical guidance with respect to these matters if they were to act rationally and not upon mere conjecture or guess", citing *Russell, supra.*

Tabor v. Miller, 389 F.2d 645 (3d Cir. 1968), does not support a contrary result. *Tabor* held that while mortality tables and technical data are admissible in Pennsylvania on the issue of life expectancy, they are not required, citing McCaffrey v. Schwartz, 285 Pa. 561, 132 A. 810 (1926). *McCaffrey* was specifically overruled by the Supreme Court of Pennsylvania in Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A.2d 657 (1964). While present worth tables were not used in the *Brodie* case, it was admitted that the actuary's testimony was in the same mould and had the same effect. The court noted that the present worth rule was not an easy rule for juries to apply, and that some enlightenment was necessary, pointing to the use of accepted tables or the testimony of a qualified expert as possible sources of such enlightenment. "Moreover, the amount of future damages warranted by the evidence and the law in a given case is a mathematical

fact. There is no logical reason why it should not be established by proof like other relevant facts." [5A]

In the instant case no evidence was introduced in the way of present worth tables or any other mathematical formula or computation that the jury could use once it had determined the amount of loss of gross future earnings. The one dollar due in one year example included by the judge in his charge demonstrated what "present worth" is but offered no guidance to the jury as to the proper mathematical calculations required to reduce Ballantine's lost future earnings covering a 23 year period to their present value.

■ The record in this case, like *Russell*, contains evidence of lost future earnings. The parties stipulated the retirement age from the railroad. Evidence was offered to show an annual diminution of earnings by $6,250.00. Plaintiff closed to the jury on this issue by multiplying the number of years of plaintiff's work expectancy with Central by the annual loss of earnings figure, arriving at a gross figure of $143,750. No other evidence was introduced on the method of reducing lost prospective earnings to present value. Under these circumstances, the award of damages cannot stand. We hold that once evidence is presented and recovery is sought for future lost earnings, the jury is entitled to receive evidence and appropriate mathematical guidance on the method of reducing lost future earnings to present worth, if they are to act rationally and "not upon mere conjecture and guess."

■ That this is an F.E.L.A. case does not prohibit such a holding.[6] The underlying philosophy of tort law that allows pecuniary recovery for injuries, even after they have healed, is that plaintiff should be compensated for harm he has suffered. Restatement, Torts, § 902.[7] A change in this philosophy is not produced merely because jurisdictional grounds other than diversity are alleged. In determining the amount of compensation, the jury should not be left free to roam between confusion and conjecture. "The defendant is entitled to a charge which will direct the jury's attention to every item and consideration which may substantially reduce the plaintiff's loss so that the jury does not charge the defendant with a loss which the plaintiff would never have to suffer. Even handed justice requires nothing less than this." McWeeney v. New York, N. H. & H. R. Co., 282 F.2d 34 (2d Cir. 1960), at 40 Lumbard (dissenting).

■ Appellee attempts to keep the issue of present worth from being raised in this court by contending that, since the error of inadequate guidance was not specifically alleged in appellant's motion for new trial, appellant should be barred from raising the issue on appeal.[8] We need only observe that it is unnecessary for appellant to assign as grounds for a new trial the ruling of the district court in order to have appellate review, because there is no obligation to file such a motion. Trout v. Pennsylvania R. R. Co., 300 F.2d 826 (3d Cir. 1962); Woods v. National Life & Accident Insurance Co., 347 F.2d 760 (3d Cir. 1965). In federal practice any

---

**5A.** *Life expectancy and mortality tables are readily available. The latter tables disclose a present value of a dollar due at the end of each year during the life of a person of specified age. The use of one or more of these tables with proper instructions to the jury will obviate appeals in this class of cases.*

**6.** We have read the briefs in La Morte v. Penn Central Transportation Co., 450 F. 2d 956 (3d Cir. 1971). Both parties presented expert actuarial evidence as to the present value of La Morte's lost fu-

ture wages. This court held there was sufficient guidance to allow the jury to reduce his lost future wages to their present worth.

**7.** Cf. United States ex rel. Jones v. Rundle, 453 F.2d 147, 150, note 11 (3d Cir. 1971).

**8.** As previously noted, appellant briefed and argued the issue presented on this appeal in support of its motion for new trial. The court was adequately apprised of appellant's views on this point in ruling on appellant's motion.

question which has been presented to the trial court for a ruling and not thereafter waived or withdrawn is preserved for review. Ryerson & Son, Inc. v. H. A. Crane & Brother, Inc., 417 F.2d 1263 (3d Cir. 1969).[9]

For the foregoing reasons the judgment of the district court will be vacated and the cause remanded for a new trial on the issue of damages.

9. See also Wagner v. Reading Co., 428 F.2d 289, 290 (note 2) (3d Cir. 1970); United States v. Harue Hayashi, 282 F.2d 599 (9th Cir. 1960).