PER CURIAM.
This is a co-employee lawsuit. Anna Jean Summers was employed by Avondale Mills in Stevenson, Alabama, as a “spinner.” Mrs. Summers was responsible for the operation of three spinning frames. In the spinning department, yarn is wound on bobbins in a spinning frame. There are three frames running simultaneously. Each frame contains 88 bobbins. The yarn is brought to the area in large cans and is run from the cans upwards over the walkway and connected to the bobbin. The bobbins are set in a ring and the yarn is wound onto the bobbin, guided by a “traveler.” The rings on the spinning frames are oiled when the machine is started so that the yarn will not break.
When the bobbin becomes full, it is removed through a process called “doffing.” The frame is stopped and the full bobbin is removed and placed in a buggy. An empty bobbin is placed on the spindle. Before the frame is restarted, spinners are to lubricate the ring with an applicator that looks much like a shoe polish applicator. Any excess oil is to be wiped up by the spinner. If the excess oil is not removed properly, drops of oil will collect in a puddle on the floor. The oil is translucent and difficult to see against the background of the floor. Once it is detected, though, the spinner would apply an absorbant to the puddle to clear the area. Mrs. Summers received no for *1128 mal training as to the proper method of applying the oil.
It was on one of these small puddles of oil that Mrs. Summers slipped and fell, incurring serious injuries. She subsequently filed suit against Greg Mullins, the plant superintendent, and Charles Broad, her immediate supervisor, for negligently and/or wantonly failing to provide her with a reasonably safe place to work. Her claims included negligent or wanton maintenance of the equipment, inspection, and training, as well as failure to warn of a defective condition. The case proceeded to a jury trial.
At the close of Plaintiff’s evidence, Defendants moved for a directed verdict. The motion was granted as to the wantonness claim, but denied as to the negligence claim. Defendants renewed their motion at the close of all evidence, but it was again denied. A jury returned a verdict against Mullins only, in the amount of $90,000. The trial judge denied a motion for j.n.o.v., and Mullins timely filed this appeal, alleging seven grounds of error.
The first issue presented by Mullins on appeal is whether the trial judge should have granted a directed verdict in favor of Mullins with respect to the issue of a personal duty either assumed by or delegated to him to provide the plaintiff with a safe workplace. The record shows that Mullins accepted the responsibility of implementing and refining a safety program for the plant. The record also shows that he was made aware of the oil leakage problem by complaints from worker groups, and that he had investigated the matter pursuant to these complaints. In short, from the evidence there can be little doubt that Mullins either assumed or was delegated this duty. For a statement of the rule with respect to assumption of duty to exercise due care to provide a safe workplace, see United States Fidelity & Guaranty Co. v. Jones, 356 So.2d 596 (Ala.1978).
It is well established in Alabama that a motion for directed verdict is properly denied where there is sufficient evidence from which a jury could infer the material fact in question. See, generally, Stauffer Chemical Co. v. Buckalew, 456 So.2d 778 (Ala.1984). Consequently, we find no error in the trial judge’s denial of the motion for directed verdict.
The second issue presented for our review is whether the trial judge should have directed a verdict in Mullins’s favor with respect to any negligence on his part which proximately caused Mrs. Summers’s injuries. It is clear, however, that there was sufficient evidence from which the jury could infer that the oil which leaked from the spinning machines created a hazardous condition of which Mullins was aware, yet failed to take appropriate action to alleviate. Under this evidence, the jury could properly conclude that Mullins negligently failed to discharge his assigned or assumed duty to correct a hazardous condition, and that, as a proximate result of this breach of duty, Plaintiff slipped and fell and was thereby injured. Thus, the trial judge’s refusal to grant the directed verdict was correct.
The third issue presented on appeal is the propriety of the trial judge’s instructions limiting to the issue of notice the jury’s consideration of evidence that there had been no prior falls. The trial court properly applied the rule as set forth in C. Gamble, McElroy’s Alabama Evidence, § 64.04 (3d ed. 1977), relating to evidence which tends to show notice of an allegedly dangerous condition. Subsection (2) deals more specifically with the admissibility of evidence of the absence of prior accidents to show the lack of notice.
Mullins argues that the more appropriate rule is that set forth in McElroy’s, supra, at § 83.01, which pertains to the admissibility of evidence that there had been no prior accidents, for the purpose of showing that the workplace was safe. Subsection (3) of that section, however, states the requirement of proof that the condition of the place of the accident was substantially the same at other times as at the time of the accident. The record does not disclose that any offer of proof was *1129 ever made so as to bring the evidence of “no prior accidents” properly within the bounds of this exception. Additionally, the case principally relied upon by Mullins for his argument, General Motors Corp. v. Van Marter, 447 So.2d 1291 (Ala.1984), also stands for the proposition that “admissibility of such evidence is within the trial court’s discretion.” Id., at 1293. Thus, we find no error in the limiting instruction given by the trial judge.
Similarly, Mullins’s issue number four also challenges the trial judge’s instructions which limited the jury’s consideration of evidence that the plant had been inspected to the issue of notice of an allegedly defective condition. Mullins contends that the evidence of inspections by representatives of the Occupational Safety and Health Administration and the insurance carrier should have been presented to the jury for its consideration of whether there was a better method for alleviating the oil leakage problem than that used by Mullins. Mullins failed, however, to provide evidence that the inspectors specifically inspected the machine in question, or in any way addressed the oil leakage problem. The trial court’s limiting the jury’s consideration of evidence that the plant had been inspected generally at some time prior to the occurrence of the accident, and that no recommendations had been made by the inspectors with respect to the problem which eventually caused the injury, where there was no proof that the problem had been specifically brought to their attention, cannot be held to have been reversible error.
The fifth issue presented for review deals with the propriety of allowing evidence of a plaintiff’s pending workmen’s compensation claim. In the face of Mullins’s argument of “curative evidence,” the trial judge properly excluded the evidence of the pending claim, which was irrelevant to the issues presented to the jury for its consideration.
In support of his sixth issue, Mullins argues that the jury instruction with respect to the duty he owed to the plaintiff was erroneous. We find no merit to this contention, either. The trial judge clearly set forth for the jury the duty owed by an employer to provide its employees with a reasonably safe workplace. This duty may be delegated or assumed by a party. The jury instruction was to the effect that if the jury found that such delegation or assumption did in fact occur, then it would need to determine whether a breach of that duty also occurred. We find nothing improper in that charge.
Appellant’s final allegation of error relates to the trial court’s jury instruction on permanent loss of earning capacity. In essence, Appellant says the trial judge erred in charging that Plaintiff could recover for loss of future earnings absent any evidence on how to properly reduce the sum awarded to present value and absent any expert testimony relating to the then-prevailing interest rate. The court charged the jury on this issue as follows:
“In arriving at the amount of any award ... for any loss of future earnings or incapacity, you should consider what the plaintiff Mrs. Summers’ health, physical ability, and earning power or capacity were before the accident and what they are now, the nature and extent of her injuries, whether or not they are reasonably certain to be permanent; and if not permanent, the extent of their duration; all to the end of determining, first, the effect, if any, of the injury upon her future earnings or earning capacity; and second, the present cash value of any loss of future earnings or earning capacity which you are reasonably satisfied from the evidence in the case, Mrs. Summers is reasonably certain to suffer in the future as a proximate result of the injury in question. Present cash value means that sum of money needed now which when added to what that sum may reasonably be expected to earn in the future will equal such earnings at the time in the future when these earnings would have been received. Damages for disability including pain, *1130 suffering, and mental anguish are not reduced to present value.” [1]
We understand Appellant’s concern that, although the substantive law stated in this instruction is accurate, it leaves the jury with no guidance for the mechanical application of the rule. As Appellant admits, however, Louisville & N.R. Co. v. Grizzard, 238 Ala. 49, 189 So. 203 (1939), holds contrary to his position. In face of the trial court’s correct statement of the law, we are not inclined to overrule Grizzard and to hold the trial court in error for its refusing to require expert testimony on the mathematical procedure for reducing the loss of future earnings to present value.
We reaffirm the long standing substantive rule set out in Alabama Pattern Jury Instructions — Civil, § 11.11. But, in so holding, we do not reject the irrefutable logic of Appellant’s argument with respect to the loss-of-future-earnings aspect of Plaintiff’s damages. As stated in Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A.2d 657 (1964):
“Trial judges and lawyers freely admit that the application of the ‘present worth rule’ is beyond the understanding and capabilities of most lay persons serving on juries. In the very least, it is a tedious and laborious task [footnote omitted]. In some jurisdictions in the United States, the courts simply ignore the rule as hopelessly difficult for the jury to follow.... Likewise, the English and Canadian courts ignore and reject it....
“The involved process of reducing future losses to their present worth has, undoubtedly, led to confusion and guesswork verdicts. Reason, logic and fairness would, therefore, dictate that enlightenment is necessary. Such can be provided, at least in part, by permitting the use of accepted tables or the testimony of a qualified expert, who can compose the proper computations. A precise, analytical calculation, properly supported by other evidence, will naturally reduce the confusion and greatly enhance the possibility of correct and just results. Verdicts based on speculation and emotional reactions will have less cause to occur. Moreover, the amount of future damages warranted by the evidence and the law in a given case is a mathematical fact. There is no logical reason why it should not be established by proof like other relevant facts.” 415 Pa. at 301-02, 203 A.2d at 659-60.
Several jurisdictions, state and federal, have agreed with the Pennsylvania Supreme Court. See, e.g., Steppi v. Stromwasser, 297 A.2d 26 (Del.1972); Ballantine v. Central Railroad of New Jersey, 460 F.2d 540 (3d Cir.1972); Russell v. City of Wildwood, 428 F.2d 1176 (3d Cir.1970); Haddigan v. Harkins, 441 F.2d 844 (3d Cir.1970). See, also, Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983).
While rejecting at this time Appellant’s challenge to the standard of proof approved in Grizzard, the Court is sympathetic to Appellant’s argument. It is the apprehension of acting — without a detailed study of the problem — to add one more layer of expert evidence to what ordinarily is already a complex trial that influences this result. But we acknowledge that this position is not easily defensible in light of the jury’s obvious need for help in its application of the substantive rule of law.
Because this issue involves a question of procedure, we will ask this Court’s Advisory Committee on Civil Rules of Practice and Procedure to study the problem set out herein and to report to this Court its recommendations for dealing with that problem in future cases.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
JONES J., concurs specially.

. This charge was taken directly from Alabama Pattern Jury Instructions — Civil, § 11.11 (1974).